## BORLAND *v.* THORNTON.

An injunction will not be sustained to stay proceedings under a judgment obtained by neglect of a party or counsel, where, if the neglect were excusable, full relief might have been had on motion in the original action.

Where an action of assumpsit was instituted in the District Court of San Joaquin county, and after the service of the summons, the defendant transmitted it and a copy of the complaint to his counsel in the City of Sacramento, with instructions to defend the action, communicating at the same time such information as he thought proper to enable his counsel to file the proper answer, and counsel thought it advisable to see defendant before filing an answer, and to prevent judgment being taken by default filed a frivolous demurrer, and wrote to other counsel at San Joaquin county, in case the demurrer was overruled to obtain time to answer, which he neglected to do, and judgment was taken against the defendant, and no application was subsequently made to the Court to open the case and grant defendant leave to answer, etc.; and the defendant subsequently filed his bill setting up these facts, and also the fact that he did not owe the debt for which the judgment was obtained, and asked for an injunction restraining the collection of such judgment, etc. : *Held,* That such bill is barren of any equitable interposition of a Court of Chancery, and that no injunction should be granted to stay the collection of the judgment.

If the neglect of the defendant in the action of assumpsit, and his counsel, were excusable, he should have applied to the Court, upon proper showing, to open the case, and allow him to answer.

Equity will not entertain jurisdiction of a suit of this nature, merely on the ground that the demand may be unconscientious, and that injustice may have been done, provided it was competent for the party to have placed the matter before the Court

Borland *v.* Thornton.

in the original action, either upon issue joined, or upon motion to set aside the verdict or judgment.

When the statute speaks of notice of a motion, it means written notice, or notice in open Court, of which a minute is made by the Clerk.

Where an order granting an injunction is made *ex parte*, the injunction may be dissolved without notice.

A County Judge, in granting an injunction upon a bill filed in the District Court, acts as an injunction master, and is exercising a power auxiliary to the jurisdiction of the District Court. The effect of such an order is the same as if made by the District Court, and the injunction is subject to be controlled, modified or dissolved, by the District Judge, the same as if issued by his order, in the first instance.

Section 334 of the Practice Act provides that an order made out of Court, without notice to the adverse party, may be vacated ŏr modified without notice. The provision made in section 118, that if an injunction be granted without notice, the defendant, at any time before trial, may apply, upon reasonable notice, to dissolve or modify the same, is not a substitution for the power conferred by section 334, but in addition to it.

APPEAL from the Fifth District, County of San Joaquin.

*Wallace & Rayle* for Appellant.

*First.* The Court erred in dissolving the injunction, irrespective of the merits of appellant's bill.

Section 118 of the Practice Act provides, that when an injunction has been granted without notice, the defendant may apply, upon reasonable notice, to the Judge who granted it, or the Court in which the action is brought.

In this case, the County Judge granted the injunction. The District Judge, not the Court, dissolved it, and without any legal notice. Section 118, Practice Act, provides that the defendant may, at any time before the trial, upon reasonable notice, etc., apply for the modification or dissolution of the injunction.

When notice of a motion is necessary, it shall be in writing, and given, if the Court be held in the same district, with both parties, five days before the time appointed for the hearing, otherwise ten days, with power of the Court or Judge to grant a shorter time, for good and sufficient reasons shown. See section 517, Practice Act.

An order granting a shorter time than provided by statute, is a special order, obtained upon special reasons given by the moving party.

28

The statute, from its terms, cannot be construed to mean, that a party may give shorter notice than that fixed by statute, in the absence of a sufficient and satisfactory reason therefor.

Neither is it, upon motion of one party, the other objecting upon the grounds of insufficient notice, to dissolve an injunction, competent for the Court then to make a special order shortening the time, by which to evade the law and obviate the objections flowing from a want of legal notice.

If, then, the statute requires, in similar cases to the one at bar, that notice of at least five days must be given, notifying the opposing party of the hearing thereof, and that such notice, to be a notice in contemplation of the law, must be in writing, and that it is in this case disclosed by the record, that notice was not served five days prior to hearing the same ; and that there is no notice contained in the record, nor any evidence whatever of written notice—how could the Court, without an infraction of the express provisions of the statute above referred to, dissolve the injunction ?  If the dissolution of the injunction by the Judge, in this case, is not in derogation of the express terms of the statute, it seems difficult for the appellant to imagine a case in which its terms could be infringed.

To contend that mere verbal notice has anything of force, legal or otherwise, is an error too apparent for serious argument.

*Second.* The Court erred in dissolving the injunction.   The reasons adduced upon the first assignment of error, are equally applicable to this.

This is a case, it is true, in which the greatest degree of diligence was not used ; still, ordinary diligence at least, was used by Borland, appellant, who was defendant in the suit of Thornton v. Borland.

The provisions of our Code seem to be expressly designed to impart relief, to parties similarly circumstanced to appellant, from judgments, orders, or other proceedings taken against them through mistake, inadvertence, surprise or excusable neglect.   See sec. 68, p. 175, Wood's Digest.

The spirit and intent of the law bind not to so rigid accountability as to deprive parties of interposing, for slight negligence, their just demands.   When a defendant sets forth the nature of his defense

under oath, disclosing wherein it is a good and valid defense, no ordinary causes should disarm him of such defense. The statute imparts to appellant no rights, but prescribes the requisites by which to avail himself of them.

Can a slight deviation, then, in the manner of enforcing his rights, take away rights independent of, and existing independent from, the statute ? The statute is only directory, and not peremptory.

The Court has ample discretion, under the provisions of the Code, to let in an answer after the time has elapsed for answering, in a case like this. See the case of Allen v. Ackey et al., 4 Howard's Practice Reports, page 5 ; Lynde v. Varity, 3 Howard's Practice Reports, page 387 ; 1 Barbour's R., p. 68 ; 9 Barbour, p. 387.

*L. Sanders, Jr.*, for Respondent.

In this case, the very judgment and order now sought to be reversed show affirmatively, that neither the appellant nor his counsel were present at the time ; and it is not shown that the defendant ever asked the Court for leave to answer. I concede, a party has a right to bide his demurrer, but I think he may waive it by his conduct and acts, in this case. The bill sworn to by appellant shows that the object of the demurrer was to get time ; that makes it frivolous.

I think it a maxim in law and in equity, that a party shall not be allowed to take advantage of his own wrong ; and that a Court of Equity, under all circumstances, will treat his injunction bill as a waiver of his right to amend : he having at no time made application for it, and indeed it should be regarded as a release of errors, if there is one in the cause.

There is such a thing as a release by operation of law. See Bouvier's Law Dictionary, 439, under the above title, part 4, sec. 2.

FIELD, J., delivered the opinion of the Court—BALDWIN, J., concurring.

This is a suit on the equity side of the Court, to set aside a judgment recovered against the plaintiff, and to allow him to interpose a defense to the action in which the judgment was rendered. The complaint alleges, that the defendant instituted an action against the plaintiff, in

San Joaquin county, in July, 1858; that summons was duly served in that county, on the fifth of August following; that the plaintiff transmitted the summons and a copy of the complaint to his counsel at Sacramento, with instructions to defend the action, communicating at the time such information as he thought sufficient to enable them to file the proper answer; that they considered it advisable to see him before answering, and, to prevent judgment by default, interposed a demurrer, and wrote to attorneys at Stockton to obtain time to answer, if the demurrer was overruled; that they saw the plaintiff as soon thereafter as his business engagements would permit, which was not, however, until the time for answering had expired; that the demurrer was overruled, and judgment taken against him, no one appearing on his behalf; and that he never employed the defendant to perform work and labor, and is not indebted to him. The complaint refers to an accompanying affidavit of one of the attorneys of the plaintiff, and to the record of the action in which the judgment was rendered. The affidavit corroborates the averments of the complaint, and states further, that the information received from their client was, that he was not indebted as alleged in the complaint in that action, or otherwise, and that they relied upon the attorneys at Stockton to attend to the demurrer, and obtain time to answer if it were overruled. The record referred to has been recently before us, in considering the appeal from the judgment. It shows that the complaint in the action was in the usual form of complaints for labor and services, drawn after the established precedents, and containing every essential averment to constitute a statement of a perfect cause of action; that a frivolous demurrer was interposed and overruled, and judgment rendered for the amount claimed, and that no application to file an answer was made, and no possession of a meritorious defense asserted by the defendant therein.

Upon the complaint in the present suit, and the affidavit and record referred to, an injunction was granted by the County Judge, on the *ex parte* application of the plaintiff. This injunction the District Judge dissolved upon a verbal notice to the plaintiff, given the same day, against his objection of a want of notice. From the order dissolving the injunction, the appeal is taken. A demurrer to the complaint was interposed, on the ground that the facts it states are insuf-

Borland *v.* Thornton.

ficient in law or equity, to constitute a cause of action ; or, in other words, to the equity of the complaint. What disposition has been made of the demurrer, does not appear from the record. It is but reasonable to suppose that it has been sustained and the complaint dismissed ; for a case more barren of all claim to the equitable interposition of the Court, can scarcely be conceived. We refer to this, not for the purpose of passing upon the sufficiency of the demurrer, for that is not before us, but to show that the injunction was improvidently granted, and in its dissolution no error was committed.

In the first place, the complaint does not set forth any valid reason for the failure of the plaintiff to plead to the merits of the original action, in the first instance. That he was prevented by business engagements from an interview with his counsel, is without avail. That the counsel thought it advisable to see their client before answering, is equally so. He gave them information which he thought sufficient to enable them to prepare an answer, and it does not appear that he was in any respect mistaken. What that information was, the complaint does not disclose. The affidavit states it to have been that he was not indebted to the plaintiff. This was sufficient to authorize the filing of a general denial. The complaint avers that the plaintiff never employed the defendant, and the defense resting upon this position, was available under such general denial. It does not appear that he had any defense which required a special answer. The affidavit, it is true, states that it was impossible for the counsel, from the general character of the information received from their client, to interpose a proper and full defense, but it does not show how, or in what respect; and so far, therefore, as the case is presented, the impossibility asserted must be regarded as resting only in averment.

In the second place, the complaint does not set forth any reason for failing to apply to the District Court to open the judgment, and to allow the plaintiff to file an answer. If the neglect of the party and his counsel were excusable, full relief was attainable, by motion in the original action. The sixty-eighth section of the Practice Act expressly provides for relief from judgments, orders and other proceedings taken against a party through his mistake, inadvertence, surprise or excusable neglect. Equity will not entertain jurisdiction of a suit of this

nature, merely on the ground that the demand may be unconscientious, and that injustice may have been done, provided it was competent for the party to have placed the matter before the Court in the original action, either upon issue joined, or upon motion to set aside the verdict or judgment.

In Bateman *v.* Willoe, (1 Sch. & Sef. 201) the party against whom a verdict had been obtained, conceiving that he had good grounds to impeach the same, directed a motion to be made to set it aside, and filed an affidavit for that purpose, but by some mistake, notice of the motion was not given within the time required by the rules of the Court, and on that ground, without inquiring into its merits, the motion was denied. Thereupon, he filed a bill to restrain proceedings upon the verdict, showing that some of the charges upon which it was founded, were performed by the opposite party without any employment by him ; that some were unreasonable, and that some had been waived in consideration of a balance paid upon an award of arbitrators, and that he was entitled to credit for several sums which had not been allowed. But Lord Redesdale, in dismissing the bill, observed that it was not sufficient to show that injustice had been done the party, but it must appear that it was done under such circumstances as to authorize the interference of equity, and said : " The inattention of parties in a Court of law, can scarcely be made a subject for the interference of a Court of Equity ; there may be cases cognizable at law, and also in equity, and of which cognizance cannot be effectually taken at law, and therefore equity does sometimes interfere ; as in cases of complicated accounts, where the party had not made defense, because it was impossible for him to do it effectually at law ; so, where a verdict has been obtained by fraud, or where a party has possessed himself improperly of something by means of which he has an unconscientious advantage at law, which equity will either put out of the way, or restrain him from using ; but, without circumstances of that kind, I do not know that equity ever does interfere to grant a trial of a matter which has already been discussed in a Court of law, *a matter capable of being discussed there,* and over which the Court of law had full jurisdiction."

In Smith *et al. v.* Lowry, (1 John. Ch. 320) the complainant was sued in action at law upon a contract to deliver a quantity of salt at a

place called Portland, on the first of September, 1812, and was engaged, at the time of the trial of the action, in June, 1814, in transporting public stores from Oswego Falls to Sackett's Harbor, and could not be allowed to quit the public service to prepare for the same, and in consequence, due preparation was not made. On the trial, a verdict was recovered against him for a much larger sum than the adverse party was entitled to, but the Supreme Court refused to grant a new trial to enable him to diminish the damages. Subsequently, it was discovered that the witness produced was procured by subornation and perjury, and thereupon the complainant filed his bill for an injunction to stay proceedings on the judgment; but Chancellor Kent refused the injunction, stating, in his opinion, that the plaintiff had employed an attorney and counsel to attend to the cause, and it did not appear that any application was made on his part to the Circuit Court, to postpone the trial, and that the fraud alleged in procuring the testimony of the witness could have been sufficiently repelled and defeated by the testimony of the witnesses who resided at the time in Portland, and whose affidavits were subsequently obtained and used on the motion for the new trial.

In Barker v. Elkins et al., (1 John. Ch. 465) the complainant filed a bill for an injunction to stay proceedings on a verdict recovered by the defendants in a suit at law against him, in which he set forth that he had paid a portion of the bills upon which the verdict was obtained, and that the defendants had received the proceeds of cotton assigned to them, sufficient to pay the balance, and averred that he had been deprived of the means of obtaining legal testimony to defend the suit; but Kent, the Chancellor, said: "The plaintiff should have made his defense at law, by way of payment or set-off; and he might, perhaps, have called for a discovery in aid of his defense at law. No reason is assigned why he did not call for a discovery, or prepare and defend himself in due season. He has not stated what were the obstacles to a defense at law. A defendant cannot come here for a new trial, when no special ground of fraud or surprise is suggested, and when he neglects or omits due diligence, and without due excuse, to defend himself in his proper place. This is a fundamental doctrine in this Court. The principle has been so often declared, that it is useless to enlarge;

and without resting on minor objections, the injunction cannot be retained on the merits of the case."

In Dodge et al. v. Strong, (2 Johns. Ch. 231) the same Chancellor reasserted what he had on previous occasions frequently declared, that relief could not be granted in a Court of Equity, for the purpose of a new trial at law, when the party had lost his opportunity at law by his own negligence.

The cases cited exhibit much more cogent reasons for the interposition of equity than the case at bar. In all the actions, the proceedings in which were sought to be stayed, issues of fact had been joined, and meritorious defenses to the demands claimed, in whole or in part existed. Here no issue of fact was joined ; a frivolous demurrer was filed, and when that was overruled, no permission to answer was requested. No one appeared for the plaintiff before the Court. The counsel engaged relied upon attorneys at a distance, who never accepted a retainer in the case, and who, from anything which appears, were not in a position to accept one. To have maintained the injunction upon the case presented, would have been against both principle and precedent.

The objection of want of due notice of the motion to dissolve, is not tenable. Verbal notice, it is true, is not such notice as the statute requires. When the statute speaks of notice, it means written notice, or notice in open Court, of which a minute is made by the Clerk. We shall consider, therefore, the order dissolving the injunction as made without notice. The order granting the injunction was made ex parte. The County Judge, in granting it, was acting as an injunction master, exercising a power auxiliary to the jurisdiction of the District Court. The effect of the order was the same as if it had been made by the District Judge. The injunction was subject to be controlled, modified or dissolved, by the District Judge, in all respects, as if issued by his order in the first instance ; and section 334 of the Practice Act provides, that an order made out of Court, without notice to the adverse party, may be vacated or modified without notice. The provision made in section 118, that if an injunction be granted without notice, the defendant, at any time before trial, may apply, upon reasonable notice, to dissolve or modify the same, is not a substitution for

the power conferred by section 334, but in addition to it. The two sections are taken substantially from the Code of New York, and a similar construction was given to them by the Supreme Court of that State, in Bruce *v.* The Delaware and Hudson Canal Company, (8 How. Prac. R. 440). In that case it was held competent for the Judge to vacate or modify an injunction order without notice, but that it was not the better practice, and should never be done, except when, from the urgency of the case, it was necessary to guard against serious loss, which sometimes might be occasioned by the delay incident to serving notice, and except, we may add, where the injunction has been improvidently granted upon a complaint disclosing no ground whatever for equitable relief, as in the present case.

Order affirmed.