Killip *v.* The Empire Mill Co.

---

JASPER N. KILLIP, Administrator of JAMES M. KILLIP, Appellant, *v.* THE EMPIRE MILL CO., Respondent.

When notice of intention to move for new trial is served within two days after judgment, and followed up by statement, &c., as the statute prescribes, the Court retains jurisdiction of the case so far as to be able to dispose properly of the motion for new trial, although the Court may have adjourned for the term between the day judgment was rendered and the filing of notice without making any order continuing the jurisdiction over the case.

But if the term expires, and no notice of intention to move for new trial is filed within the statutory time, then the Court loses jurisdiction of the case.

A mere verbal notice, given out of Court in conversation with counsel of the successful party, that a new trial will be moved for, is not sufficient. It must be in writing, or in open Court, and a minute made of it.

The facts in this case do not show any waiver of service of the notice.

It is not the duty of counsel to inform their opponents that they are about to omit some steps in the proper management of their side of the case.

The Court, having lost jurisdiction of the case by the lapse of time, and the failure of respondent to file notice of intention to move for new trial within two days after judgment, could not restore its jurisdiction by an order allowing the notice to be filed *nunc pro tunc* as of a former day.

Could the Court have made such an order even during the continuance of the term at which the judgment was rendered ? Quere.

A revenue stamp may be affixed to the notice of appeal even after motion to dismiss. When affixed, it renders notice operative from the time of filing.

The appeal here was properly taken from the order granting a new trial, rather than from the order allowing notice to be filed *nunc pro tunc*.

It is not necessary to appeal from a void order which can have no operation or effect.

Killip *v.* The Empire Mill Co.

Extending the time for making statement, under the circumstances of this case, cannot be construed as a waiver of notice of intention to move for new trial.

The sixty-eighth section of the Practice Act does not provide for the granting of such relief as was attempted to be granted by this *nunc pro tunc* order.

A Court of Chancery may relieve from a judgment at law, after the law Court has lost all jurisdiction.

But it must be upon a bill filed in a proper case. This equitable relief cannot be granted on motion.

APPEAL from the District Court of the First Judicial District, Hon. RICHARD S. MESICK, presiding.

The facts are stated in the opinion.

*Tod Robinson*, for Appellant, made the following points :

First—The Court had no power to set aside the verdict and its judgment after the adjournment of the term. (*Baldwin* v. *Kramer*, 2 Cal. 583 ; *Morrison* v. *Dapman*, 3 Cal. 255 ; *Shaw* v. *McGregor*, 8 Cal. 521 ; *Robb* v. *Robb*, 6 Cal. 22 ; *Suydan* v. *Pitcher*, 4 Cal. 281 ; *Castro* v. *Richardson*, 25 Cal. 49.)

Second—It is not competent for a Court to supply the deficient acts of parties by an order *nunc pro tunc*. This order is only to supply errors, oversights, or omissions of the Court. (*Gray* v. *Brignardello*, 1 Wallace's Reports U. S. S. C. 627 ; *De Castro* v. *Richardson*, 25 Cal. 49 ; *Hegeler* v. *Henckell*, 27 Cal. 492.)

Third—The Practice Act, section one hundred and ninety-five, provides the modes and conditions on which a new trial can be had, and this provision, like every other regulation of that Act, is exclusive. (*Hamilton* v. *Smith*, 21 Cal. 134.) The injunction of that Act is, that a party wishing to move for a new trial must— first, give notice of his intention to the opposite party ; second, he must, after notice has been given, file and serve a statement of facts ; third, after he has given the notice and served his statement, he is then entitled to make his motion. (*Jenkins* v. *Frink*, 27 Cal. 338, 339.)

In California, without exception, they have held that an omission to comply with the provisions of the Act in any one of the particulars is a waiver or loss of the right to move for a new trial. (*Cany* v. *Silverthorne*, 9 Cal. 67 ; *Mahoney* v. *Caperton*, 15 Cal. 313 ; *Allen* v. *Hill*, 16 Cal. 113 ; *Munch* v. *Williamson*, 24 Cal. 169 ; *Easterby* v. *Larco*, 24 Cal. 179 ; *Bear River Co.* v. *Boles*, 24

Cal. 354 ; *Flateau* v. *Lubeck*, 24 Cal. 364 : *De Castro* v. *Richardson*, 25 Cal. 49 ; *Ellsassar* v. *Hunter*, 26 Cal. 279 ; *Hegeler* v. *Henckell*, 27 Cal. 495 ; also the case of *Rowe* v. *Bacellagupe*, which is not reported.)

*L. Aldrich* and *C. J. Hillyer*, for Respondent, made the following points :

First—The appeal should be dismissed for want of a stamp on notice of appeal. (Statutes of 1865, pages 127, 132, and 323.)

Second—This Court cannot reverse the order allowing notice of intention to move for a new trial to be filed "*nunc pro tunc*," because it is a special order, made after final judgment, and should have been directly appealed from. (Statutes 1861, p. 363, § 285 ; Statutes 1861, p. 302, § 281 ; *Henly & Hastings* v. *Hastings*, 3 Cal. 341 ; *Gilman* v. *Contra Costa County*, 8 Cal. 52.)

Third—The provision of the statute requiring a notice of intention to be given of the motion for a new trial does not require that the notice should be in writing. (Statutes 1861, p. 346, § 195.)

Fourth—The object of the notice of intention to move for a new trial was accomplished. The motion itself, and the grounds on which it is based, are the essential parts of the proceeding, the notice being intended merely to advise the adverse party of the proceeding and to bring him into Court. (*McLeran* v. *Shartzer*, 5 Cal. 70 ; *Williams et als.* v. *Gregory*, 9 Cal. 76.)

Fifth—It appears in the case that the failure to serve a written notice of intention to move for a new trial was the result of mistake, inadvertence, or excusable neglect, and the Court had the right to relieve respondent by ordering that the notice might be filed *nunc pro tunc.* (Statutes 1861, p. 324, § 68.)

Opinion by BEATTY, J., LEWIS, C. J., concurring.

The plaintiff in this case brought an action, in the nature of an action of ejectment for an undivided interest in a certain piece of mining ground. The plaintiff claimed to derive his title from a deed executed by one Clark to J. M. Calip.

The defendants claimed to derive title from the same Clark, and averred that when the deed was made by Clark, the name of J. M.

Killip or *Calip* was inserted therein by mistake ; that it should
have been made to one Rice, from whom defendants derived title.
Defendants made their answer in the form of a cross complaint, and
demanded a reformation of the deed from Clark, so that the name
of Rice should be inserted in lieu of J. M. Calip.   This cross com-
plaint of defendant seems to have been first disposed of by the
Court refusing to reform the deed.   After this determination of the
case by the Judge acting in the capacity of chancellor, the case in
ejectment was submitted to the jury, and they rendered a verdict
in favor of plaintiff, and a judgment was therein entered.   Subse-
quently, the Court below made an order granting a new trial, and
from that order an appeal was taken to this Court.

The appellant contends that this case cannot be heard on its
merits, for the reason that no motion for new trial was made during
the term at which the judgment was rendered, nor any order made
during the term extending the time for making such motion or con-
tinuing the jurisdiction of the Court over the case.

And for further reason, that no notice of intention to move for
a new trial was given within the time prescribed by statute.   The
facts on which these propositions are based are as follows :

The verdict of the jury was rendered, and the judgment entered,
on the first day of March, 1865.   On that day the Court was
adjourned for the term.   On the second day of March, 1865, one
of the counsel for respondent, A. W. Baldwin, Esq., prepared a
notice of intention to move for a new trial to be served on the
opposite counsel, but by some oversight this notice never was
served.   After the verdict and judgment, (the affidavit of Baldwin
says the first of March, that of Foster fixes it the third of March)
Baldwin and Foster, one of counsel for appellants, met, and some
conversation took place about the preparation of a statement for
new trial.

The version of this interview differs slightly as given by Baldwin
and Foster.   But Baldwin, either directly or by implication, in-
formed Foster of his intention to move for a new trial, and asked
an extension of time to file his *statement* on motion for a new trial.
Foster did not object to the extension of time, but referred Baldwin
to Judge Bryan, an associate counsel, for the signing of any requi-
site stipulation, as he did not desire to sign any.   Bryan was then

applied to, and he declined to act, but referred the counsel of defendant to Judge Robinson, a third counsel for plaintiff. A written stipulation in these words was sent to Judge Robinson's office: " By stipulation in the above cause, the defendant is allowed an extension of fifteen days wherein to file a statement on motion for a new trial."

About noon of the third day of March, Robinson brought this stipulation to the office of defendant's counsel, and declared he could, or would not sign that stipulation, but did agree to draw up one to suit himself, says Baldwin, and sign it.

Robinson says he assured Baldwin he had no.objection to his taking the fifteen days, and would take no advantage of his failure to file statement, in less than fifteen days. But he had not been able, as yet, to draw a stipulation satisfactory to himself, and was afraid he could not. That he was afraid some inference might be drawn, · from signing the stipulation, prejudicial to his client's rights. These statements differ slightly ; but taking them both together, and it is evident Robinson was willing to give the time required, but unwilling to waive anything by so doing. Between the third and sixth, another application was made to Robinson to sign the stipulation, or some stipulation to extend the time, and, on his declining to do so, application was made to the District Judge to extend the time for filing the statement. This order he made on the sixth of March.

On the 11th, for the first time, Baldwin discovered his notice of *intention* to move for a new trial had been overlooked by his clerk, and not served.

Application was then made, on proper notice to the Court, for leave to serve this notice *nunc pro tunc.* In time, this order was made. Had the Court, under this state of facts, any jurisdiction over the case, and the right to grant a new trial ?

The first point of appellant is, that the Court lost jurisdiction over the case by adjournment, without making any order for retaining · the case within its jurisdiction, either for the purpose of hearing a motion for a new trial, or for any other purpose. The general principle contended for by appellant is undoubtedly correct. But, we think, the statute operates to continue the jurisdiction of Courts in all cases where the judgment is followed by notice of intention to move for new trial, statement on motion, etc., made within the re-

spective times prescribed by statute.    Certainly, under ordinary circumstances, if no notice of motion for new trial is made within two days after rendition of judgment, and the Court has, in the meantime, adjourned, all jurisdiction óf the Court over the case would be gone ; the statute makes one exception : the Court may, within six months after the rendition of judgment, where summons was not served on defendant, set it aside.    So, too, the Court may correct errors, supply defects, etc., in its judgments, where there is something in the records or minutes of the Court whereby to make the corrections or supply the defects.

In this case, the judgment was on the first day of March and the adjournment on the same day.    If, before the end of the third of March, there was no notice, of intention to move for a new trial, no waiver of that notice, and no act which was equivalent to notice, then the Court lost jurisdiction of the case.

First, was there a notice such as the statute requires ?    The Practice Act, section 195, requires a notice of intention to move for a new trial to be given within two days after trial, and within five days thereafter the necessary statement or affidavits to be filed, etc. This section does not, in terms, require the notice of intention to be given in writing ; but the act requires each of these things to be done within a specified time.    If the notice is not given in writing, as a matter of practice, it would be extremely difficult to determine, with certainty, the date at which such notice was given, and the result would be a great temptation to perjury and misrepresentation of facts, and uncertain and unsatisfactory records.    This Court would frequently be compelled to weigh testimony and determine doubtful facts, when, under a proper practice, no such doubt could arise.

If, then, this were a new point, never decided by any former tribunal, we should hesitate long before we would hold that a mere verbal notice would be sufficient.    More especially would we be un-willing to hold that a mere casual observation, not intended to operate as a formal notice, but merely as an introduction to another subject, should be held as a sufficient notice.    In this case it is not pretended by Baldwin that his observations to Foster were intended to operate as a notice.    When he made those remarks to Foster about his intention to move for a new trial, he thought his clerk had

already served, or would in due time serve the written notice of intention. Whatever he said on this subject was merely as introductory to his request for extension of time to prepare statement on motion for new trial. It was not intended as a formal notice. But we are not without decisions on this subject. We think it has been repeatedly held that, when a statute requires a notice to be given in the course of any judicial proceedings, and the mode of giving it is not pointed out, it must be given in such way as to preserve some tangible evidence of a compliance with the law. Sometimes it has been held or intimated that such notice could not be given in writing. In other cases it has been held, that a notice given in open court, when entered on the minutes kept by the clerk, might be sufficient if such minutes showed all the necessary facts, such as the form and date of notice, the presence of the party in court to whom the notice was given, etc. But this, we think, is as far as any court has gone in dispensing with a written notice. See *Borland* v. *Thornton,* 12 Cal. 440 ; *Bear River Co.* v. *Boles et al.,* 24 Cal. 354.

Secondly: Was there any waiver by appellants to excuse the non-delivery or service of notice of intention to move for a new trial ? Usually a person waives a right in one of two ways : as by express declaration of intention to waive a right, or some act equally indicative of such intention ; or, on the other hand, by some act or declaration which has induced another party to think he has waived his right, and induce the other party to act on that supposed waiver. In this latter case, the waiver is a species of estoppel. Does this case come within either of these classes ? When Robinson refused to sign the stipulation prepared for him at the office of Baldwin, (whether we take the version given by one or the other of those gentlemen) if it shows anything, it shows this : that Robinson was willing to give the extension of time for the preparing of a statement, if he could do so without waiving any right of his client in other respects ; but was determined to be very guarded in signing any stipulation to that effect, not to waive other rights. Certainly there could have been no other objection to signing the stipulation proffered, except the fear of its being treated as a waiver of something else.

Did the conduct of Robinson induce the other side to do any

material thing, or refrain from doing anything necessary to preserve their rights? He certainly did not induce respondents to do any affirmative act to change their condition. He did not do anything to prevent their serving their notice of intention. Baldwin acted on the belief it was served. Robinson's conduct was not calculated to induce Baldwin to omit the making of service; but his hesitation, his expressed fear of waiving some right, should have put Baldwin on his guard, and induced greater vigilance. He evidently saw Robinson conceived his client had some legal advantage, which he would not waive. If Baldwin had never seen Robinson still the notice of intention to move would never have been served.

Their interview did not cause the paper to be covered up on the table of Baldwin's clerk.

From the earnestness with which the appellants argued the proposition that the Court having adjourned without making any order keeping the case open for motion for new trial, that it lost jurisdiction thereof at the end of the term, it would seem most probable that Robinson's objection to signing the stipulation about the time for making a statement had reference to this point. Supposing the Court had lost jurisdiction of the case, he did not want to invest the Court with any new powers by signing the papers presented to him.

But admitting that he was aware Baldwin had not served any notice of intention to move for a new trial, and possibly might not do so if he was not reminded of his duty in this respect, was it Robinson's business to remind him of his failure? Should he, when at Baldwin's office at noon, on the third day of March, have said, " you have not yet served us with any intention to move for a new trial?" Had he done so, would it not have been a gross violation of his duty to his own client? We cannot think it the duty of counsel to inform their opponents of any omission they are about to make in the management of their side of the case.

We are clear, then, that this case is unaffected by the conduct or declarations of Robinson and Foster, at their several interviews with Baldwin.

Leaving these acts and declarations out of view, and the simple question is, whether the Court, having lost jurisdiction of the case at the end of the third of March, that jurisdiction could be restored by an order allowing respondents to serve a notice in the month of

May, which should, under the order of Court, take effect as if it had been served on the third of March preceding.

We think that the very statement of the proposition shows how it should have been determined. If the Court had lost jurisdiction of the case, the order itself was made by a tribunal having no jurisdiction, and was a nullity. If the Court could, by such an order as this, restore its own jurisdiction, it might, when a party brings a suit on a note barred by a statute of limitation, make an order that when the clerk filed the complaint he should file it *nunc pro tunc*, as of some former date, so as to be within the statutory time for bringing the action. So, too, if a party failed to file his notice of appeal within one year after judgment, the Court might on the same principle direct the clerk to date the filing as of some former day, so as to bring it within one year. The Court cannot by an order *nunc pro tunc* repeal or suspend the operation of a statute.

In this case the whole proceeding on motion for new trial was an absolute nullity, for want of the service of notice of intention to move for a new trial within the two days limited by law. If the oversight in serving the notice had occurred and been discovered during term time, it is not necessary here to determine whether the Court could have relieved the party from the effect of this inadvertence or mistake.

Respondents move to dismiss this appeal because the notice of appeal had no State revenue stamp upon it. The law on this subject is not very clear, yet we think it apparent that it was not the intention of the Legislature to make any instrument void for want of a proper stamp, but simply to render them invalid and ineffectual until the stamp was affixed. When the stamp is affixed, then the instrument is to take effect from its date. We have held several times on preliminary motions to dismiss appeals for want of stamps on notice of appeal, that the stamp might be affixed after motion made. We allowed that course to be pursued in this case, and think it the proper practice.

There was no necessity for the appellant to appeal from the order allowing the notice to be filed *nunc pro tunc*, for the reason that the order was a nullity, and could not affect them. If it had been an order which the Court had a right to make, and it had merely been a question whether that right was exercised with proper discretion,

the only way to review that discretion would have been by appeal from the order.    But the order itself being a nullity, and not affecting the rights of appellant, there was no necessity for an appeal. When an appeal is taken from an order granting a new trial, this Court must ascertain from the record whether the Court below had the power to make such order.

Respondents contend that appellant verbally extended the time for filing statement, and thereby waived the service of notice of appeal, and refer to *M. Swan* v. *Shulzer*, 5 Cal. 70, and *Williams et al.* v. *Gregory et al.* 9 Cal. 76.    If those cases are authority, of which we have some doubt, they are very different from this.    The conduct of respondent in each of these cases was such as to show he acquiesced in the omission of the notice.    In the first case he appeared in the County Court and contested a motion for a continuance, without any objection to the sufficiency of the notice of appeal. In the latter case the respondent filed a counter statement, etc., after the statement was filed.

Here appellant filed no counter statement, did not appear to contest the motion for new trial, nor do any act to waive his rights, except to express his willingness that respondents might have fifteen instead of five days within which to file statement, and accompanying this verbal agreement was a clear intimation that it must not be construed as waiving anything.    When this agreement for extension was made, the time for serving notice had not expired.    Surely if that agreement waived any past omission, it would hardly be construed as waiving a thing which might be done in the future, and ought to have been done thereafter, even if Robinson had signed the stipulation offered to him.

Respondents contend that the Court was authorized to grant relief from the effects of their omission to serve notice by the provisions of the sixty-eighth section of the Practice Act, and they quote and italicise the following language in that section : " The Court may in furtherance of justice    *    *    *    *    *relieve a party, or his legal representatives, from a judgment, order, or other proceedings taken against him through his mistake, inadvertence or excusable neglect.*" The order here did not relieve respondents from any judgments, etc., taken against them by mistake, inadvertence or excusable neglect.    The judgment was upon a full trial, and not as the result

of any omission of respondents. They do not ask to be relieved directly from any judgment or order against them. They ask to be placed by the order *nunc pro tunc* in a situation to take some step against the appellant.

The evident object of this statute is to relieve a party from the effects of some judgment or order made by the Court in its regular proceedings ; not to give a party some affirmative right which he has lost by his own conduct, but in regard to which the Court has made no order whatever.

We have made no examination of this case so far as the merits are involved. For such purpose the case is not before us.

This is simply an appeal from an order granting a new trial, and the District Court had no jurisdiction of this case for such purpose.

The order for a new trial is set aside, and the original judgment restored.