GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, A CORPORATION, PLAINTIFF AND RESPONDENT, *v.* STATE BOARD OF EQUALIZATION, ET AL., DEFENDANTS AND APPELLANTS.

No. 9796.
Submitted June 4, 1958. Decided Feb. 3, 1959.
335 Pac. (2d) 310.

Forrest H. Anderson, Atty. Gen., William F. Crowley, Asst. Atty. Gen., Jerrold R. Richards, Sp. Asst' Atty. Gen., for appellants. Jerrold R. Richards argued orally.

Luxan & Scribner, Ralph J. Anderson and Stanley P. Sorenson, Helena, for respondent. Ralph J. Anderson argued orally.

MR. JUSTICE ANGSTMAN:

Plaintiff, a New York corporation, brought this action in the district court for declaratory and injunctive relief.

The complaint alleged that in November 1949, it qualified and received a license to write life insurance policies in Montana; that each year thereafter it prepared corporation license tax returns upon forms supplied by the defendant Board of Equalization and paid its corporation license taxes as computed in the returns; that no complaint was made by defendant Board regarding the returns or the taxes paid until in the month of

April 1956, when the Board demanded an additional $999.54; that the Board erroneously and unlawfully computed taxes for the years 1947 and 1948 during which years plaintiff was not authorized to do business in Montana and in truth, and in fact, did not do business in Montana during those years.

The complaint further alleges that defendant Board because of section 84-1505, R.C.M. 1947 is barred from questioning the tax for the years 1949, 1950 and 1951 because of the lapse of more than five years after the returns were due (a point which we since ruled on in State ex rel. Anderson v. State Board of Equalization, 133 Mont. 8, 319 Pac. (2d) 221).

It further alleged that the defendant Board in computing the income of plaintiff for the year 1952 included the sum of $8,752 as income from bonds issued by the Montana Power Company; that plaintiff did not in that year own any bonds of the Montana Power Company; that it purchased bonds of the Montana Power Company in May 1953, and did receive interest thereon that year which the Board included in its computation but plaintiff alleges this was erroneous since the Montana Power Company is a New Jersey corporation; that the Board also included in its computation interest for the year 1954, in the sum of $12,245 from bonds issued by the State Board of Education, whereas the bonds were not purchased until July 13, 1954, and did not pay interest after purchase by plaintiff until January 1, 1955, and that no interest was received by plaintiff from that source in the year 1954. The complaint also charges other erroneous acts on the part of defendant Board.

Upon the filing of the complaint on May 18, 1956, the court issued an order to show cause and restraining order. The order to show cause was returnable on June 4th at 10:00 a. m. It recited:

"That in the meantime the defendants and each of them be restrained and enjoined from doing any acts attempting to in any way enforce the collection of the alleged deficiency tax referred to and described in plaintiff's complaint on file herein and from attempting to enforce any penalties or deprive the

plaintiff of any rights by reason of the attempted levy of said deficiency tax until the further order of the court.''

On May 29th defendants gave notice of a motion to dissolve the temporary restraining order based on several grounds. It was notice for hearing on June 4th the very day that the order to show cause was returnable. The motion was denied. Defendants filed a notice of appeal from that order.

Plaintiff has filed a motion to dismiss the appeal.

The question presented by the motion is whether a restraining order is an order "granting an injunction" and whether an order refusing to dissolve a restraining order is appealable within the meaning of section 93-8003 which permits an appeal from an order "granting an injunction" and from an order "refusing to dissolve an injunction." That a restraining order is an injunction in a certain sense cannot be questioned. But is it an injunction within the meaning of section 93-8003?

This court answered in the negative in Wetzstein v. Boston & M. Consol. Copper & Silver Min. Co., 25 Mont. 135, 63 Pac. 1043, 1044. The court distinguished between a restraining order and an injunction by saying: "A restraining order is distinguishable from an injunction, in that a restraining order is intended only as a restraint upon the defendant until the propriety of the granting of an injunction, temporary or perpetual, can be determined, and it does no more than restrain the proceedings until such determination. Such an order is limited in its operation, and extends only to such reasonable time as may be necessary to have a hearing on an order to show cause why an injunction should not issue. [Citing cases.]''

Here the order was limited to a reasonable time. In fact the order to show cause was returnable the very day that defendants noticed for hearing their motion to dissolve.

The ruling in the Wetzstein case was followed in Maloney v. King, 25 Mont. 256, 64 Pac. 668; State ex rel. Rankin v. Martin, 65 Mont. 323, 211 Pac. 210; Pack v. Carter, 9 Cir., 1915, 223 F. 638, and recognized as sound in State ex rel. Public Service Commission v. District Court, 103 Mont. 563, 63 Pac. (2d) 1032.

The case was cited with apparent approval of the distinction between a restraining order and an injunction, temporary or permanent, in Sheridan County Electric Co-Op v. Ferguson, 124 Mont. 543, 227 Pac. (2d) 597, an opinion written by Mr. Chief Justice Adair.

The Wetzstein case was decided in 1901. Since that time section 93-8003 has been amended twice by the legislature, but no effort was made to change it so far as it was affected by that decision. If the legislature was not satisfied with the interpretation of the statute as made in the Wetzstein case, it certainly would have changed the statute so as to authorize appeals from restraining orders.

The case of Labbitt v. Bunston, 80 Mont. 293, 260 Pac. 727, at first reading may seem to take a view contrary to that of the Wetzstein case, but such is not the fact. In that case the court drew a distinction between the Wetzstein case and the case before the court on the ground that in the Labbitt case the hearing on the motion to dissolve was tantamount to a hearing on the order to show cause. The court stated at page 302 of 80 Mont. at page 731 of 260 Pac.

''Where the matter is heard upon an order to show cause, the right to a temporary injunction is 'adjudicated' by the decision rendered after the hearing (Winnett Pacific Oil Co. v. Wilson, above [71 Mont. 250, 229 Pac. 850]); so here, as the motion to dissolve presented the question of plaintiff's right to the restraining order, and the decision on the motion was equivalent to decision on the hearing on the order to show cause and rendered such a hearing needless, the order of September 24th was an 'adjudication' of the plaintiff's right to an injunction pendente lite and an order refusing to dissolve an injunction, from which an appeal lies under section 9731 [Rev. Codes 1921, now .R.C.M. 1947, sec. 93-8003], above, and it is so declared by Mr. Justice Hunt, speaking for this court in Bennett Bros. Co. v Congdon, 20 Mont. 208, 50 Pac. 556, which decision is referred to in the Wetzstein opinion, but therein the distinction between an ap-

peal from a restraining order and from an order refusing to dissolve such injunction is not noted.''

Here there has as yet been no hearing on the merits of the case or on the issue as to whether plaintiff is entitled to an injunction pendente lite.

No record has as yet been made as to whether defendant Board seeks to tax plaintiff for years before it was doing business in Montana or for income it states it never received or what, if any, distinction exists between this case and that of State ex rel. Anderson v. State Board of Equalization, supra.

We do not yet know what the district court will do with the case on its merits so far as the issuance of a temporary injunction is concerned. That is the reason why there is no appeal from an order granting a temporary restraining order. Such an order simply holds everything in *status quo* until the matter can be heard and the judge's views obtained.

We should not be called upon to assume jurisdiction of an appeal before the district judge had indicated his views. Those views could have been obtained, or at least hearing could have been held, the very day when defendant Board noticed its motion for hearing.

It is contended that this court entertained an appeal under circumstances similar to those here in Stalcup v. Cameron Ditch Co., 130 Mont. 294, 300 Pac. (2d) 511. That case is different from the case before us here. The opinion starts out by saying:

''Appeal by the plaintiffs (appellants) from an order made after hearing which denied a temporary injunction and dissolved a temporary restraining order theretofore issued.''

There the court had issued a temporary restraining order. A hearing was had and the court denied a temporary injunction and dissolved the restraining order. The appeal was from the order denying the temporary injunction and obviously was proper. If the appeal was proper also from the order dissolving the restraining order, it was so because there had been a hearing involving the merits within the reasoning of the Labbitt case.

On first reading the case of Marchi v. Brackman, 130 Mont.

228, 299 Pac. (2d) 761, would seem to militate against the conclusion we have reached here. That case differs from this in that the lower court had sustained the general demurrer to the complaint. It likewise granted a motion to strike much of the material from the complaint. Because of those facts, this court properly said at page 232, of 130 Mont. at page 764 of 299 Pac. (2d) : ''The order granting the motion to strike and dissolving the restraining order was, in effect, an order refusing to grant an injunction,'' and hence appealable. In that case there had been a hearing within the ruling of the case of Labbitt v. Bunston, 80 Mont. 293, 260 Pac. 727, and nothing further could be done in the trial court. It had ruled that the complaint was insufficient. That was a definite ruling that plaintiff was not entitled to an injunction. Here there has as yet been no hearing to ascertain the views of the trial court as to whether an injunction should issue.

The case of State ex rel. Thompson v. District Court, 132 Mont. 53, 313 Pac. (2d) 1034, does not treat of the question before us here. There had been a hearing in that case touching the merits. There was no attempted appeal from a temporary restraining order or from an order refusing to dissolve it, as here.

The holding in the Wetzstein case, which has never been overruled should be followed under the doctrine of *stare decisis* so elaborately defined in the dissenting opinion of Mr. Justice Adair.

It follows that the attempted appeal from the order must be and is dismissed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE CASTLES concur.

MR. JUSTICE ADAIR:

I dissent.

A majority opinion of this court written by Chief Justice Harrison, concurred in by Justices Angstman and Castles and pronounced on January 14, 1958, ordered the appeal herein

taken by the respondent state board and state officers dismissed. Such opinion also expressly overruled any and all former opinions and decisions of this court "directly or indirectly holding that an order granting or denying a motion to dissolve a temporary restraining order is appealable." See: Guardian Life Insurance Company of America v. State Board of Equalization, Appeal No. 9796, 15 State Reporter at pp. 30 to 37.

To such majority opinion by Chief Justice Harrison, I filed a written dissent in which Justice Bottomly concurred, wherein we pointed out that such original majority opinion is manifestly unsound and incorrect in that:

(1) It overturns and unsettles the established practice and procedure long followed and relied upon by both the bench and the bar of this jurisdiction;

(2) It is violative of the provisions of Section 1 of Article IV, and Sections 1, 2 and 15 of Article VIII of the Constitution of Montana, and of the provisions of sections 93-4201, 93-4203, subd. 4, 93-8003, subd. 2, 93-8004, subd. 3 and 93-401-15 of the Revised Codes of Montana of 1947.

Under the guise of judicial "interpretation" it assumes to construe statutes so plain, simple and readily understood as to require no construction and to usurp powers given to and reserved *for* the legislative department *only* and, by such means, to change and amend valid statutes long since borrowed from the Codes of California and adopted and enacted *verbatim* by the Montana Legislature. See Guardian Life Insurance Company of America, a corporation v. State Board of Equalization, Appeal No. 9706, 15 State Reporter at pages 37.1 to 37.40.

On January 24, 1958, this court, on appellants' application therefor, made and entered an order extending the time for appellants to serve and file their petition for rehearing herein, and on February 14, 1958, within the time so allowed, appellants did serve and file such petition for rehearing.

The respondent Life Insurance Company filed no objection to appellants' petition for a rehearing nor to the granting

thereof, and on March 12, 1958, this court made an order granting appellants' petition for a rehearing of this appeal.

On May 19, 1958, this court ordered that the rehearing so granted be set for oral argument for June 4, 1958, on which latter date counsel for all the parties attended upon this court and again orally argued the appeal, following which Mr. Justice Angstman has written the majority opinion wherein an attempt is made to review the authorities cited in my original dissent and to answer the objections therein set forth, but nevertheless to adhere to the ruling theretofore made and the result reached in the majority opinion by Chief Justice Harrison of January 14, 1958.

The Facts. The plaintiff, the Guardian Life Insurance Company of America, is a corporation created, organized and existing under the laws of the State of New York. Some years ago such foreign insurance company qualified for and was issued a license by the State of Montana, to transact business in this state which privilege the company has since enjoyed and exercised.

The defendant, The State Board of Equalization of the State of Montana, is an administrative board created by the Constitution of Montana. See Montana Constitution, art. XII, sec. 15; R.C.M. 1947, secs. 84-701, 84-1501 to 84-1519; and State ex rel. Bourquin v. State Board of Equalization, 67 Mont. 340, 351, 215 Pac. 667.

The defendants, J. F. Reid, W. J. Winters and E. J. Byrne, at the time of the commencement of the instant action, were the members of and collectively constituted the State Board of Equalization which Board, under the provisions of sections 84-1501 to 84-1519, inclusive, of the Revised Codes of Montana of 1947, was and is charged with the duty of administering the state's corporation license tax law.

The defendant, State Treasurer of the State of Montana, is an executive officer provided for by the Constitution of Montana and, as such public officer, required to perform such duties as are prescribed in the Constitution and in the *laws* of the state.

Montana Constitution, Art. VII, sec. 1; R.C.M. 1947, secs. 79-201 to 79-210, and 79-301 to 79-306.

*Refusal to Pay Tax.* In April 1956, the defendant, State Board of Equalization, hereinafter referred to as the Board, in the performance of its duties under the *law,* notified the plaintiff insurance company that it then was indebted to the State of Montana in the amount of $999.54 as a deficiency corporation license tax due under the provisions of R.C.M. 1947, secs. 84-1501 to 84-1519, supra.

The plaintiff life insurance company failed and refused to pay to the State of Montana the $999.54 corporation license tax so demanded or any part thereof.

*Refusal to Comply with Statute.* The insurance company likewise ignored, failed and refused to comply with any of the provisions or procedure prescribed by the Legislature, in Section 84-4502 of the Revised Codes of Montana of 1947, providing for the payment of the tax demanded under protest and the bringing thereafter of an action for the recovery of the money so paid under protest.

*Brings Injunction Suit.* Instead of availing itself of the remedy provided by the Legislature in its enactment of R.C.M. 1947, sec. 84-4502, supra, the plaintiff life insurance company, on May 18, 1956, by and through its counsel, Ralph J. Anderson, Stanley P. Sorenson and others, by complaint that day filed in the district court of the first judicial district of the State of Montana, in and for the County of Lewis and Clark, commenced this *injunction* suit, being district court cause No. 25667, against the State Board of Equalization, its three members above named and the State Treasurer of the State of Montana. There is no question but that this is an *injunction* suit and it was so labelled by the clerk of the district court on his register of actions at the time the suit was filed.

*Complaint.* In its complaint the plaintiff insurance company states that its suit is brought to obtain a declaratory judgment and an *injunction* against the defendant public officers *requiring them to refrain from doing any acts attempting to in any*

*way enforce the collection* of the $999.54 deficiency corporation license tax demanded. See R.C.M. 1947, sec. 93-4201.

In paragraphs designated XVI and XVII of its complaint, the insurance company's counsel attempt to set forth the circumstances and conditions which they contend render the specific remedy provided by *law*, R.C.M. 1947, sec. 84-4502, inadequate and therefore warrant the granting of an *injunction* against the defendant public officers.

The two concluding paragraphs of the complaint read:

"XVI. That the only remedy available, other than the remedy herein sought, would be to pay the alleged tax under protest and bring suit for its recovery in an action at law; that in such action the plaintiff, if successful, cannot recover any interest and that such action would no doubt be appealed to the Supreme Court of Montana and that the calendar of that Court is in such condition that it would be a number of years before the case could be heard on appeal and that by seeking an *injunction* the appeal is entitled, under the Rules of the Supreme Court of Montana, to advancement in the date of hearing and that therefore the action at law is inefficient and inadequate. [Emphasis supplied.]

"XVII. That the defendants herein threaten to and will, unless enjoined by this court, proceed to attempt to enforce the collection of said deficiency tax under the statutes in such cases made and provided and that the conduct of the defendant Board and the defendant Treasurer in that connection would be illegal, unlawful and void and that great damage and detriment to the plaintiff herein and to other taxpayers will be done and that therefore relief by way of *injunction* is an absolute necessity." Emphasis supplied.

None of the above-quoted averments of the complaint justify the attempt here made by the plaintiff life insurance company to substitute the extraordinary and drastic remedy of *injunction* for the *specific* procedure and remedy expressly provided by *law* in section 84-4502, supra, for plaintiff's relief, namely, *the*

*payment of the taxes under protest and an action at law for the recovery of the money so paid.*

That the *law,* section 84-4502, supra, fails to provide for the recovery of any interest on taxes paid under protest does not render inadequate the remedy and relief therein expressly provided. If interest on taxes paid under protest is to be allowed it is for the Legislature and not for the supreme court to amend the *law* to so provide.

The plaintiff life insurance company's bold averment in the above-quoted sixteenth paragraph of its complaint to the effect that the calendar of the supreme court "is in such condition that it would be a number of years before the case could be heard on appeal and that by seeking *an injunction* the appeal is entitled, under the Rules of the Supreme Court of Montana, to advancement in the date of hearing" is manifestly a clever and selfish attempt to place the plaintiff foreign life insurance corporation at the head of the long line of litigants each awaiting his turn to have his particular appeal given an early setting, hearing and determination in the supreme court.

Plaintiff's representation "that by seeking *an injunction* the appeal is entitled * * * to advancement" on the calendar supplies no valid excuse, ground nor justification for plaintiff's failure and refusal to comply with the specific requirements and provisions of the *law,* R.C.M. 1947, sec. 84-4502, supra, which *law,* in the judgment of the Legislature, provides an adequate remedy for the relief of the plaintiff life insurance company and those similarly situated.

*Supreme Court Rule, XIII, subd. 3.* The particular rule of court, which the plaintiff life insurance company invoked, in the sixteenth paragraph of its complaint, is subdivision 3 of Rule XIII of the present Rules of the Supreme Court, in effect continuously since July 1, 1899, and which, so far as is here pertinent, reads:

"*3. Advancement of Causes.* Appeals from orders dissolving, *refusing to dissolve,* granting or refusing to grant *writs of injunction* * * * are entitled to precedence, and will, upon motion

óf either party, be advanced on the calendar.'' Emphasis supplied. Compare R.C.M. 1947, secs. 93-8003, subd. 2, and 93-8004, subds. 3 and 4.

By its above-quoted rule this court has recognized both the need and the desirability of establishing a definite procedure providing for obtaining immediate action which, on proper application therefor, will enable this court to speedily entertain, advance on the calendar, hear and determine *any* appeal from *any* order of *any* district court or district judge either ''dissolving, *refusing to dissolve,* granting or refusing to grant'' *any injunction.* Rule of Court XIII, subd 3.

*Prayer for Relief.* The prayer for relief with which the plaintiff insurance company concludes its complaint reads:

''Wherefore, plaintiff prays that upon the filing of this Complaint an order to show cause issue out of the above entitled court directed to the defendants above named and commanding them to appear before the above entitled court on a date and at **a** time certain then and there to show cause, if any they have, why they and each of them should not *be enjoined and restrained during the pendency of this action from doing any act or acts attempting in any way to enforce the collection of the alleged deficiency tax and from attempting to enforce any penalties or deprive the plaintiff of any rights by reason of the attempted levy of said deficiency tax* and requiring the defendants to show cause, if any they have, why they should not *be restrained and enjoined, during the pendency of this action.*

''That upon the final hearing of this cause the Court adjudge and decree that the said attempted levy of said deficiency tax is void upon the grounds and for the reason hereinbefore alleged and that the defendant hereinabove named *be permanently enjoined and restrained from the doing of any of the acts or things outlined* in the preceding paragraph.

''*That in the meantime the defendants, and each of them, be restrained and enjoined from the doing of any of the acts or things outlined in the preceding paragraphs until the further order of this court.*

"That the regulations, action and conduct of the defendant Board promulgated on and after February, 1956, be adjudged to be null and void and of no force and effect whatsoever or at all.

"For such other and further relief as may to the court seem meet and equitable in the premises." Emphasis supplied.

It will be noted that in its above prayer, the plaintiff applied for three different forms or species of *injunction* orders, viz.:

1. In the first paragraph of its prayer plaintiff asks that defendants be commanded to show cause "why they should not be restrained and enjoined *during the pendency* of this action." This request is for an *injunction pendente lite*.

2. In the second paragraph of its prayer, plaintiff asks that upon the final hearing defendants "be *permanently* enjoined and restrained from doing any of the acts of things outlined." This request is for a *permanent injunction*.

3. In the third paragraph plaintiff asks, "That *in the meantime* the defendants * * * be restrained and enjoined from the doing of any of the acts or things outlined * * * *until further order of this court.*" This request is for a *preliminary injunction*.

*Judge Fall's Order.* On May 18, 1956, and immediately upon the filing of plaintiff's complaint, counsel for the plaintiff insurance company, without any notice of any kind to defendants, and without furnishing any undertaking, bond or other security, presented to and procured from the Honorable Victor H. Fall, then the district judge assigned to and presiding in department No. 2 of the aforesaid district court, a typewritten order which, omitting the title of the court and cause, reads:

"Order to Show Cause and Restraining Order. On reading the positively verified Complaint of the plaintiff on file herein and good cause appearing therefrom,

"It is Ordered that the defendants and each of them show cause before this Court on the 4th day of June 1956, at the hour of ten o'clock A. M. at the courtroom of the above-entitled court at the courthouse in Helena, Lewis and Clark County, Montana,

why the defendants and each of them should not be enjoined and restrained during the pendency of this action from doing any act, or acts, attempting in any way to enforce the collection of the alleged deficiency tax and from attempting to enforce any penalties or deprive the plaintiff of any rights by reason of the attempted levy of said deficiency tax and requiring the defendants to show cause, if any they have, why they should not be so restrained and enjoined during the pendency of this action.

"*That in the meantime the defendants and each of them be restrained and enjoined from doing any acts attempting to in any way enforce the collection of the alleged deficiency tax referred to and described in plaintiff's Complaint on file herein and from attempting to enforce any penalties or deprive the plaintiff of any rights by reason of the attempted levy of said deficiency tax until the further order of this Court.*

"It is Further Ordered that this order be served upon the said defendants, together with a copy of the Complaint of the plaintiff, not less than five days prior to the return day herein fixed.

"Dated this 18th day of May 1956.

"Victor H. Fall

District Judge." Emphasis supplied.

*Order to Show Cause.* The first paragraph of the above order requires the defendants, the State Treasurer, the State Board of Equalization and each of the three state officers comprising such Board, to show cause on June 4, 1956, why they "should not be enjoined and restrained *during the pendency of this action* from doing any act, or acts attempting to in any way enforce the collection of the * * * deficiency tax." This part of the order requires these five defendant state officers to show cause why an *injunction pendente lite* should not issue.

*Injunction Order.* The second paragraph of the above order constitutes and is a *preliminary injunction* requiring defendants to refrain "from doing any acts in any way attempting to en-

force the collection of the * * * deficiency tax * * * *until further order of this Court."*

In 43 C.J.S. Injunctions, sec. 2, footnote 8 at page 407, it is said: "If a restraint imposed by order of court is 'until the further order of the court' it is a 'preliminary injunction' regardless of what the order is called by the court issuing it."

"Whether an order is a restraining order or a temporary injunction must be determined from its form and substance. The restraint which the order purports to impose and not the name given to it determines its true name and character." State ex rel. Public Service Commission v. District Court, 103 Mont. 563, 566, 63 Pac. (2d) 1032, 1033, 1034.

On May 18, 1956, the sheriff of Lewis and Clark County personally served the above-quoted *injunction* order upon the defendants, State Board of Equalization and upon each of its three members and on the following day said sheriff personally served such *injunction* upon the defendant State Treasurer.

At all times since such service, the hands of each defendant have been effectively tied by the *injunction* which requires that each shall refrain from performing the duties imposed upon him by *law* in effecting or attempting to effect collection from the plaintiff life insurance company of the corporation license tax here involved.

On May 23, 1956, the defendants, in response to the aforesaid order to show cause, served upon plaintiff's counsel and filed in the district court, defendants' joint written notice of motion for an order to require plaintiff to post a bond herein together with the motion referred to in said notice and accompanied by the joint supporting affidavit of the three named members of the defendant Board.

*Notice of Motion to Dissolve Injunction.* On May 29, 1956, the defendants further and in response to the aforesaid order to show cause served upon plaintiff's counsel and filed in the district court written notice of motion to dissolve Judge Fall's *injunction* order of May 18, 1956, together with the written motion referred to in said notice, wherein they represented such

motion would be made upon the pleadings, papers, records, and files in the action and based upon the following grounds:

1. That under the rules then in force in said district court, the Honorable Victor H. Fall, the district judge then presiding in department No. 2 of said court, had no jurisdiction to grant or issue said *injunction* order in this cause so filed and pending in department No. 1 of said district court, wherein the Honorable George W. Padbury, Jr., then was the district judge presiding. See State ex rel. Magnuson v. District Court, 125 Mont. 79, 84, 85, 231 Pac. (2d) 941, 943, 944; Deich v. Deich, ...... Mont. ......, 323 Pac. (2d) 35.

2. That the *injunction* order was granted and issued without notice to any of the defendants and without any showing made in the pleadings or otherwise that irreparable injury would result by the delay that would be occasioned by giving notice and that no finding was made by Judge Fall that irreparable injury would result by delay in giving notice. See R.C.M. 1947, sec. 93-4206.

3. That the plaintiff life insurance company has an adequate remedy at law under the provisions of R.C.M. 1947, sec. 84-4502, contained in Chapter 45, Title 84, of the Revised Codes of Montana of 1947.

4. That plaintiff's remedy at law under the provisions of R.C.M. 1947, sec. 84-4502, supra, is exclusive and supersedes the remedy of *injunction*.

5. and 6. That plaintiff's complaint upon which the *injunction* order was granted fails to set forth sufficient grounds for the granting or issuance of the *injunction* order.

7. That plaintiff's complaint, upon which the *injunction* was issued, does not set forth sufficient grounds to constitute a cause of action for *injunction*.

8. That under the provisions of R.C.M. 1947, sec. 93-8908, no *injunctive remedy* can be granted in an action for a declaratory judgment prior to the determination and declaration of the rights of the parties litigant.

9. That there was no showing made in the pleadings or otherwise that excuses or justifies the issuance of the *injunction* order without notice and without requiring that an undertaking be first given.

*Motion to Dissolve Injunction.* On June 4, 1956, being the return day specified in Judge Fall's above-quoted order to show cause, a hearing was had thereon before the Honorable George W. Padbury, the district judge then assigned to and presiding in department No. 1 of said district court, at which time defendant's counsel also orally made, presented and argued defendants' motion to dissolve the injunction against them and also defendants' motion to require plaintiff to post a bond based upon and supported by the aforesaid joint affidavit of the defendants, Reid, Winters and Byrne. Following such hearings the matters and motions there presented and argued were taken and held under consideration and advisement by said district judge for more than five months with no ruling made on any of the matters submitted.

*Judge Padbury's Order.* It was not until November 21, 1956, that Judge Padbury, by a single order, made his ruling wherein he denied defendants' motion to dissolve the injunction order of May 18, 1956, and also denied defendants' motion of May 23, 1956, seeking to require plaintiff to post a bond.

Judge Padbury's order denying both motions was entered in the minutes of department No. 1 of the district court in book 55, at page 312. It merely recites:

"All motions are overruled and defendants granted 20 days to further plead."

The district court order of November 21, 1956, overruling the motion to dissolve the prior order of May 18, 1956, which restrained and enjoined the defendants from doing particular acts was, in effect, *an order refusing to dissolve an injunction,* from which order an appeal to this court lies.

The Legislature of Montana, by the enactment in the law of this state of sections 93-8003 and 93-8004 of the Revised Codes of Montana, has expressly provided that an appeal may be taken

to the supreme court from an order so refusing to dissolve an injunction.

Section 93-8003, subd. 2, R.C.M. 1947, so far as pertinent here, provides:

"*From what judgment or order an appeal may be taken.* An appeal may be taken to the supreme court from a district court in the following cases: * * *

"2. From an order granting * * * an injunction; or refusing to * * * dissolve an injunction; * * *"

Section 93-8004, subd. 3, R.C.M. 1947, so far as here applicable provides:

"An appeal may be taken: * * *

"3. From an order granting * * * an injunction; from an order refusing to * * * dissolve, or modify an injunction * * * within sixty days after the * * * order is made or entered, or filed with the clerk."

The above-quoted provisions of sections 93-8003 and 93-8004, of the Revised Codes of Montana of 1947, is the *law* of this jurisdiction which *law* expressly authorizes the taking of this appeal to this court.

On January 10, 1957, the defendants by and through the Attorney General of the State of Montana duly served and filed in the office of the clerk of the district court, defendants' timely and proper notice of their appeal "from those certain orders, rulings * * * entered herein, on the 21st day of November, 1956, denying and refusing defendants' petition, motion and request for the dissolution of a temporary writ of injunction or restraining order and from the whole thereof * * *."

On March 14, 1957, counsel for the plaintiff and respondent signed, served and filed in this court a written motion to dismiss the appeal herein which motion, omitting only the number of the appeal and the title of the court and cause reads:

"Motion to Dismiss Appeal. Comes now the plaintiff and respondent and moves this Honorable Court to dismiss the purported appeal in the above entitled action upon the grounds and for the reasons:

"1. That this is an appeal from certain orders made in the respondent court seeking to dissolve a temporary restraining order and also an appeal from an order denying the motion of the defendants and respondents to furnish a bond and it appears from the transcript on appeal that the orders attempted to be appealed from were made and entered by the Honorable George W. Padbury, Jr., then Judge of the respondent court and the record is certified to by the Honorable Victor H. Fall, another Judge of the respondent court who was not the Judge who heard, tried and decided the case and that therefore the record does not comply with the statutes of the State of Montana in such cases made and provided.

"2. That there is no appeal provided by statute for an appeal from an order seeking to require the plaintiff and respondent to furnish a bond on the injunction.

"Ralph J. Anderson

"Luxan and Scribner

"Attorneys for Plaintiff and Respondent."

Plaintiff's above motion to dismiss the appeal was made upon two (2) "grounds" and two (2) "grounds" *only*.

The first "ground" and contention questions the authority and right of District Judge Victor H. Fall, who made and issued the restraining and show cause order of May 18, 1956, to certify to the record on appeal herein.

The second "ground" and contention is that there is no appeal provided by statute from an order refusing to require the plaintiff life insurance company "to furnish a bond on the injunction."

Plaintiff's motion to dismiss this appeal rests wholly upon the above two "grounds" and contentions and none other.

*Authority to Make Judge's Certificate.* At the time the district judge's certificate was made to the transcript on appeal Judge Padbury's term of office as judge had expired and he then was no longer a district judge, nor was he then within the State of Montana. Judge Fall was then *the* duly elected, qualified and acting district judge· assigned to and regularly pre-

siding over and in department No. 1 of said district court wherein are lodged and kept the notices, motions, pleadings, orders, minutes, papers, and files constituting the record herein. Under the provisions of R.C.M. 1947, sec. 93-8017, Judge Fall was *the* judge to make the certificate and the insurance company's objection and challenge to such certificate are lacking in merit. Compare Granite Mountain Mining Co., v. Weinstein, 7 Mont. 346, at pages 350, 351, 17 Pac. 108, at page 110.

*One Appealable Order Sufficient.* Of course there is no statute providing for an appeal from an order denying a motion to require the posting of a bond in an *injunction* suit. However, section 93-8003, subd. 2 and section 93-8004, subds. 3 and 4, Revised Codes of Montana of 1947, expressly provide for, and allow *an appeal from an order refusing to disssolve an injunction* and, on such appeal, the defendants are privileged to list, specify, brief, present and argue such claimed errors of the trial court as may be disclosed in the transcript of the proceedings filed on the appeal. ''The fact that two separate notices were included in the same paper, though an appeal does not lie from one of the orders, does not affect the right of the appellant to prosecute an appeal from the one which is appealable.'' Macginniss v. Boston & Montana Consolidated Copper & Silver Mining Co., 29 Mont. 428, at pages 445, 446, 75 Pac. 89, at page 92. Thus the plaintiff's motion to dismiss this appeal is wholly devoid of merit.

On June 5, 1957, defendants served and filed their printed brief on their appeal to this court, comprising 109 pages, wherein they assign as their only two specifications of error: (1) The denial of their motion to dissolve the injunction order, and (2) The denial of their motion to require bond.

On July 5, 1957, the plaintiff insurance company, served and filed its printed answer brief comprising 48 pages.

On August 9, 1957, defendants served and filed their printed reply brief, comprising 69 pages, and thereupon the appeal became and was at issue on the merits.

*Motion to Advance on Calendar.* On August 13, 1957, counsel for the plaintiff insurance company signed, filed and presented to the Chief Justice a written motion to advance the appeal on the calendar "for hearing as provided in Subdivision 3 in Rule XIII of the Rules of this Court and as ground for this motion *represents * * * that this is an appeal from an order refusing to dissolve a writ of injunction; * * *"* Emphasis supplied.

On August 16, 1957, in response to plaintiff's aforesaid motion to advance and its counsel's representation therein *"that this is an appeal from an order refusing to dissolve a writ of injunction"* and therefore entitled to precedence and advancement on the calendar, the Chief Justice made and signed an order setting the appeal on the calendar for hearing and oral argument before this court for September 9, 1957, at 10:00 a. m., being the opening day for the hearing of cases on this court's September, 1957, calendar. The only justification for thus advancing this appeal on the calendar is that *"this is an appeal from an order refusing to dissolve a writ of injunction"* as was claimed by defendants in their motion to advance under subdivision 3 of this court's Rule XIII, supra.

On September 9, 1957, all the issues and matters involved in plaintiff's motion to dismiss the appeal, as well as those involving the merits of the appeal, were orally argued before this court and submitted for determination.

*"The question presented."* In his majority opinion herein, Mr. Justice Angstman asserts:

"The question presented by the motion [to dismiss the appeal] is whether a restraining order is an order 'granting an injunction' and whether an order refusing to dissolve a restraining order is appealable within the meaning of section 93-8003 which permits an appeal from an order 'granting an injunction' and from an order 'refusing to dissolve an injunction'."

First. No such question is raised by any party to this appeal. Plaintiff's motion to dismiss the appeal raises no such issue nor did the briefs of counsel nor their oral arguments before this court at the original hearing on the motion to dismiss the appeal.

Thus the so-called "question presented," designed, created and set up in the majority's opinion herein becomes and is but a mere phantom and "straw-man" raised *sua sponte* by the majority with which to shadowbox and tussle throughout their opinion. What is said concerning this phantom nonexistent "question" becomes and is but *obiter dicta* which decides and settles nothing.

Second. The distinguished counsel appearing for the respondent insurance company fully recognized and they expressly represented to this court "that this is an appeal from an order refusing to dissolve a writ of injunction." Clearly from such district court order an appeal lies under the express provisions of R.C.M. 1947, sec. 93-8003, subd. 2 and 93-8004, subd. 3, which fact is recognized by Supreme Court Rule XIII, subd. 3.

Third. The Attorney General of Montana and his staff appearing for the appellants, The State Board of Equalization, the members of said Board and the State Treasurer, likewise recognize that this is a timely and proper appeal taken from an order refusing to dissolve an *injunction*.

Fourth. It has long been the settled law in this state that:

"An injunction is an order requiring a person to refrain from a particular act." R.C.M. 1947, sec. 93-4201.

"A temporary restraining order is an injunction." McKelvy v. Broadwater, 87 Mont. 103, at page 107, 285 Pac. 190, at page 191.

Sections 93-4201, 93-8003 and 93-8004 of the Revised Codes of Montana of 1947, supra, were all taken from the laws of California.

In Territory v. Stears, 2 Mont. 324, at page 330, the court said: "Our statute is a re-enactment of that of California, and the construction put upon it by the California Courts might be said to be enacted with the statute."

In Lindley v. Davis, 6 Mont. 453, at page 455, 13 Pac. 118, at page 120, the court said: "The rule of statutory interpretation is, 'What did the legislature intend?' and the intent of the

legislature in regard to a law adopted from the statute of one state, already interpreted by the court of last resort in that state, is presumed to be in accord with that interpretation. In other words, when a legislature adopts a statute from another state, it will be presumed to have adopted that statute as interpreted theretofore by the courts of that state. In Hershfield v. Aiken, 3 Mont. [442] 449, the court said: 'Our habit is to follow the supreme court of California when applicable, having taken our Code from that state.' It has been frequently held by this court that this rule would be followed in the interpretation of the statutes of California adopted by our legislature.''

In Stadler v. First Nat. Bank, 22 Mont. 190, 203, 56 Pac. 111, 114, 74 Am. St. Rep. 582, the court said: ''* * * when a legislature borrows a statute from another state, the legislature will ordinarily be presumed to have adopted the statute with the interpretation theretofore given it by the courts of that state.'' Also see: State ex rel. Rankin v. State Board of Examiners, 59 Mont. 557, 561, 197 Pac. 988; H. Earl Clack Co. v. Staunton, 105 Mont. 375, 383, 72 Pac. (2d) 1022. Compare De Witt v. Hayes, 2 Cal. 463, 56 Am. Dec. 352; Coker v. Simpson, 7 Cal. 340; Prader v. Grim, 13 Cal. 585, 586; Miles v. Edwards, 6 Mont. 180, 9 Pac. 814; McKelvy v. Broadwater, supra; State ex rel. Smith v. Vedder, 130 Kan. 472, 287 Pac. 232; Sheridan County Electric Co-op, Inc. v. Ferguson, 124 Mont. 543, 227 Pac. (2d) 597; and Creek v. McManus, 13 Mont. 152, 32 Pac. 675; City and County of San Francisco v. Beideman, 17 Cal. 443.

In Sullivan v. Triunfo Gold & Silver Mining Co., 33 Cal. 385, the respondent interposed in the supreme court a motion to dismiss the appeal contending that no appeal lies from an *ex parte* order granting an injunction. In denying such motion the Supreme Court of California, in part, said:

''The order is an order granting an injunction, when made *ex parte* as well as when made on notice, and may be enforced in the same way. Section three hundred forty-seven provides, that an appeal may be taken 'from an order granting or dissolving an injunction.' *The language is explicit, and clearly covers every*

*case of an order granting an injunction. It does not say from an order granting an injunction made on notice, or upon order to show cause. Nothing is said about an order adjudicated after a contest, or after both sides have been heard.* The appeal is from 'an order granting an injunction,' in the broadest terms, without limit or qualification. There is nothing in any other portion of the statute, so far as we have been able to discover, that in any way limits the scope of this express provision of the statute. It is true, that under section three hundred thirty-four, where an *ex parte* order has been made, the Judge who made the order is authorized to vacate or modify it *ex parte.* And under section one hundred eighteen, *the party restrained by an injunction granted without notice may, upon notice, apply to the Judge who granted it, or to the Court, to dissolve or modify it. These remedies are in nowise inconsistent with the right to appeal without any such previous application. The remedy may be only cumulative and concurrent.* In Borand v. Thornton, 12 Cal. 440, 448, the general provision of section three hundred thirty-four, that 'an order made out of Court, without notice to the adverse party may be vacated or modified without notice,' was held to be applicable to *ex parte* orders granting injunctions as well as to other orders. Yet there was a special provision relating to the particular subject of injunctions in section one hundred eighteen, that, if 'an injunction be granted without notice, the defendant, at any time before the trial, may apply upon reasonable notice to the Judge \* \* \* or the Court \* \* \* to dissolve or modify the same.' The provision of section one hundred eighteen, especially applicable to injunctions, was held not to be inconsistent with, or a limitation upon, the more general language of section three hundred thirty-four. *The Court decided that either mode might be pursued.* With much greater reason it may be held, that the provisions of section one hundred eighteen and three hundred thirty-four are not inconsistent with, or limitation upon, the provisions of sections three hundred forty-seven allowing appeals from 'orders granting injunctions.' Besides, in 1851, when sections one hundred

eighteen and three hundred thirty-four were adopted, there was no appeal in any case from orders granting injunctions. The remedies under those sections were the only remedies available before final judgment in the action. The amendment allowing appeal from the order granting the injunction was not adopted till 1854. This is a subsequent provision, and clearly indicates an intention to provide a further remedy. It is said that an *ex parte* order granting or refusing an injunction is not required to be entered on the minutes of the Court. If this be so, it is equally true with respect to similar orders made by the Judge at Chambers, on notice or upon order to show cause. In both cases the order is made by the Judge at Chambers, and is enforced as the order of the Court. The argument then, bears with as great force against an appeal in the latter, as in the former cases.

"It is said that no case can be found in the California Reports, in which the right to appeal from an *ex parte* order granting an injunction has been determined, and that this fact indicates a practical construction of the Act against the right. But the absence of such a determination may easily be accounted for upon other principles. *Ordinarily, when time is important, the party temporarily enjoined would seek the quickest mode of relieving himself from the order; and obviously, that would be to apply at once to the Judge who made it, either without or upon notice, as the exigencies of the case might seem to render most advisable, to dissolve it. Probably in ninety-nine cases out of a hundred this would be the course pursued. But the action of the Judge, whatever it might be upon the application, would not be final, for whether he dissolve, or refused to dissolve, the injunction, the losing party would be entitled to appeal. A case might, therefore, arise in which it would be more advantageous to the party restrained to have a speedy decision from the Court of last resort, which would be final, than to obtain for the time being a dissolution of the order of the Judge who made it with a right of appeal, and the control of the appeal and consequent power to delay a final determination remaining in the*

*party seeking the injunction. The statute allowing an appeal in the first instance was, doubtless, designed to provide for such cases. However this may be, the causes indicated are amply sufficient to account for the fact that appeals are much more frequently taken after an application to dissolve than before.* But there are two cases, at least, in which the right of appeal from an *ex parte* order granting an injunction has been recognized. In the case of Martin v. Travers, 7 Cal. 253, an *ex parte* injunction having been obtained, and *a motion to dissolve made and denied, an appeal was taken from the order refusing to dissolve the injunction.* The Court held, that, under the provisions of sections three hundred thirty-six, and three hundred forty-seven, of the Practice Act, as they then stood, no appeal was allowed, and said : 'The appeal should be taken from the order granting an injunction.' The decision was rendered in 1857, and sections three hundred thirty-six and three hundred forty-seven, as amended in 1854, then in force, only provided for an appeal 'from an order granting or dissolving an injunction.' *The amendment allowing an appeal 'from an order refusing to grant or dissolve an injunction,' was subsequently made.* It is true that it was only necessary to decide that under the law as it then stood, no appeal could be taken from an order refusing to dissolve the injunction. But the question immediately associated with the question decided, at once arose in the minds of the Court. *Is there, then, no remedy in case of refusal to dissolve? And if there is, what is it? Upon looking at the statute, the answer was obvious. There is a remedy, for an appeal lies 'from the order granting an injunction.' It is so expressly provided.* The Court, therefore, at once said the appeal must be taken from the order which created the mischief—the order in which the error was first committed. And this must be correct, or there was no remedy at all so far as the provisional injunction was concerned. There was no means of correcting the second error by appeal from the order refusing to dissolve, and if there was no appeal from the order granting the injunction, it was only necessary to procure the order *ex parte* and a refusal to

dissolve, and the injunction would remain till the final disposition of the cause, whether properly granted or not—a condition of things which we do not think was contemplated, and the Court in the case cited was evidently of the same opinion. * * * Thus, it will be seen, that the right to appeal has been recognized in two cases, and we think it plainly authorized by the express provision of the statute, and but for the fact that the point is made and earnestly pressed by experienced and able counsel, in an elaborate and plausible argument, we should not have deemed it requisite to discuss the question so fully.

"Under the views expressed the motion to dismiss the appeal must be denied, and it is so ordered." Emphasis supplied.

In Dahler v. Steele, 1870, 1 Mont. 206, 208, it is said: "It is the object of courts where a cause is dismissed, as far as they can, to put the defendant in the same condition he was before suit. * * * If an injunction has been awarded, it is dissolved, and he permitted to perform the acts, from the doing of which he was restrained. See Dowling v. Polack, 18 Cal. 626."

In Miles v. Edwards, 1886, 6 Mont. 180, 182, 9 Pac. 814, 815, the court cited and followed a number of California decisions including Prader v. Grim, supra, and inter alia, said: "The contention of appellants * * * is (1) that as this restraining order merely required the respondent to appear before the judge in chambers, 'on the twenty-third day of July, A. D. 1884, to show cause, if any he has, why he should not be enjoined,' etc. * * * 'and in the meantime, and until the hearing of this order, said defendant * * * be enjoined and restrained,' etc., that after said twenty-third day of July said restraining order was *functus officio*, and had expired by limitation; (2) that there is no right to recover for expenses incurred in the suit for attorney's services rendered after the death of the restraining order, after July 23d.

"Are these positions of counsel tenable? Is it true that a restraining order in the language of the one under consideration —'To appear * * * on the twenty-third day of July, 1884, to show cause, if any he has, why he should not be enjoined, * * *

and in the meantime, and until the hearing of this order, be enjoined'—is invalid, and of no effect? It never was the law that a court is under compulsion to perform a judicial act at the very day and hour it has cited a litigant to appear before it. Many circumstances are conceivable which would prevent prompt action, such as sickness of judge, other and more important business. *No one would be safe in violating a restraining order because of the lapse of the time mentioned in it, if the order itself informed him that at the expiration a judicial hearing was contemplated.* This order expressly extended the restraint until the hearing. Mandates of courts are entitled to a reasonable construction, because they are made in the interest of public welfare. This position of appellants, therefore, cannot be maintained.

"* * * *The vitality of a restraining order is not limited necessarily, or even usually, by the date mentioned in it.*

\* \* \* \* \* \* \* \*

"There was no error in refusing the second instruction asked by appellants. It was thus: 'The restraining order in the suit of Edwards v. Miles expired of itself, and required no motion to dissolve it or set it aside.' What has already been said is sufficient to indicate that the life of a restraining order, in the language of the one under consideration, has no specific term of existence. If it is desirable to terminate its existence, the place of its birth must also be the scene of its death. In courts such orders have their beginnings and their ends. To put courts in motion, some action, by motion or otherwise, must be taken by parties or their attorneys." Emphasis supplied. Compare Prader v. Grim, 13 Cal. 587, supra.

In Granite Mountain Mining Co. v. Weinstein, 1888, 7 Mont. 346, 348, 349, 17 Pac. 108, 109, Chief Justice Newton W. McConnell, speaking for the supreme court, said:

"But it is insisted that the order under consideration is not appealable because made by the judge at chambers, and not by the district court. We have two chapters on the subject of ap-

peals; one entitled appeals in general, and the other appeals to the supreme court from the district court. Section 421, subsec. 3, Code Civil Proc., is as follows, to-wit: 'An appeal may be taken from an order granting or refusing a new trial; from an order granting or dissolving an injunction; *from an order refusing to* grant or *dissolve an injunction;* from an order dissolving or refusing to dissolve an attachment; from an order granting, or refusing to grant, a change of the place of trial; from any special order made after final judgment,' etc. In this section nothing is said as to where the orders have been made, whether before a court or the judge at chambers. In section 444, subsec. 2, we have the same cases enumerated in which an appeal may be taken to the supreme court from the district courts; * * * We find, by reference to the Code of Civil Procedure of California, that that state has precisely the same statute, and as our statute was taken from that of California, we will follow in its construction that given by the highest court of that state; * * * An order granting or refusing an injunction, an order dissolving an injunction or attachment, or refusing to do so, is made appealable, and these orders may all be made at chambers; but to give the strict interpretation of the statute that we are asked to do would render all such orders nonappealable when made at chambers. Our statutes on appeals were enacted by the first legislative assembly of this territory, which convened at Bannock, December 12, 1864, and were taken from the laws of California of 1851; and the right of appeal from orders and judgments made by the judge at chambers has been acquiesced in by the profession ever since, and no question of this kind was ever made before, so far as our reports show." Emphasis supplied.

In Blue Bird Mining Co. v. Murray, 1890, 9 Mont. 468, 474, 475, 23 Pac. 1022, 1023, in an opinion by Chief Justice Blake, concurred in by Justices Harwood and De Witt, this court entertained and decided an appeal taken from an order of the district court modifying an injunction theretofore issued. The respondents moved to dismiss the appeal on the grounds that:

(1) This court has no jurisdiction of the appeal; (2) The order sought to be appealed from is not appealable; and (3) No exceptions were taken and there was no bill of exceptions. This court in denying the motion to dismiss the appeal and affirming the trial court's order modifying the injunction whereby defendants were permitted to prosecute certain work in the mine workings of plaintiff said: "These provisions of the Code of Civil Procedure of this state are similar to those of the Code of California, and we have adhered to the same rule."

In Bennett Bros. Co. v. Congdon, 1897, 20 Mont. 208, 214, 50 Pac. 556, 558, in an opinion by Mr. Justice William H. Hunt, with Chief Justice William Y. Pemberton and Justice Horace R. Buck concurring, this court said that, "in our opinion an order vacating a temporary restraining order is an order dissolving an injunction, from which an appeal lies * * *"

Creek v. McManus, 1893, 13 Mont. 152, 158, 32 Pac. 675, 676, was an appeal from a judgment for defendant entered on a directed verdict in an action on an injunction bond wherein plaintiff sought damages resulting from the alleged wrongful issuance of the injunction. In an opinion by Mr. Justice DeWitt with Chief Justice Pemberton and Justice Harwood concurring it is said:

"But in the case at bar the right to an injunction was the only cause of action set up or litigated * * * Upon the trial the temporary injunction was dissolved, and a perpetual injunction denied, at one stroke, and by one service of the attorney. The damages caused the plaintiff herein were caused by the action of McManus v. Creek, and the issuance of the temporary injunction on the complaint therein. The defendant employed an attorney to resist that injunction. *Instead of attacking the temporary injunction, which was in force, by a distinct motion for that purpose, the attorney dissolved it by another sort of attack.* He assaulted the very foundation of the injunction,—that is, the action in which it was granted,—and demolished the whole structure by one effort. These facts render applicable the case of

Miles v. Edwards, 6 Mont. 180, 9 Pac. 814, in which case, as in the case at bar, the only cause of action was the injunction.''

In the Creek case, supra, this court recognized that in practice defendants could have made a direct attack upon the temporary injunction but that under appropriate facts and circumstances it was likewise possible to challenge the entire proceeding by a motion for a directed verdict which, if granted, would dissolve the injunction as well as dispose of the entire cause of action.

Butte & Boston Consolidated Mining Co. v. Montana Ore Purchasing Co., 1900, 24 Mont. 125, 138, 60 Pac. 1039, 1044, decided when Chief Justice Brantly and Justices Hunt and Pigott constituted the court, was an action to recover damages for the wrongful removal of ore from a mine and to restrain its further operation. A temporary restraining order was issued on the complaint alone. Defendants move to discharge the temporary restraining order. That motion and an application for an injunction pending the litigation were heard together. The lower court discharged the temporary restraining order, and denied the injunction *pendente lite*. Plaintiff appealed from each order. This court in a *per curiam* opinion, *inter alia*, said:

''Having concluded our expression of what we conceive to be the law to control cases like the present one, we believe that under the facts the defendants, who are mining through the Rarus shaft, should have been enjoined *pendente lite*. The situation is peculiar, and, under the circumstances, becomes such that the nonjoining co-tenant, plaintiff, may appeal to the court to prevent further danger to its rights likely to happen by allowing defendants to take ore out of the Snohomish and Tramway mines through the Rarus shaft. The Rarus is in itself an independent, operated mine, to which plaintiff has no legal right of access. * * * Physical conditions thus enable defendants to impede the plaintiff in its absolute right to have secured to it a literal fulfillment of the obligations the defendants assumed in mining the Snohomish and Tramway claims. Damages may be irreparable by a continuance of the conditions. * * * Interference

with this right of plaintiff is cause for action, and injunction to stop mining so conducted will lie. * * * The question of the constitutionality of the amended statute was raised by plaintiff; but as we hold the court erred in denying plaintiff's motion for an injunction *Pendente lite,* on the grounds discussed, we will reverse the order made in this respect, reserving an opinion upon the constitutional questions. The order dissolving the temporary restraining order is affirmed. The order denying an injunction *pendente lite* is reversed. Cause remanded, with directions to proceed accordingly.''

In Campbell v. Flannery, 1903, 29 Mont. 246, 74 Pac. 450, in an opinion prepared by Commissioner Clayberg for the court, concurred in by Chief Justice Brantly and Justices Milburn and Holloway, this court entertained and decided, on its merits, an appeal by the plaintiffs from a district court order dissolving a temporary injunction which had been granted upon the filing of a complaint and without notice.

In Labbitt v. Bunston, 1927, 80 Mont. 293, 300, 260 Pac. 727, 730, in an opinion by Mr. Justice John H. Matthews, with Chief Justice Lew L. Callaway and Justices Galen, Stark and Myers concurring, this court said:

"Section 9240 [now R.C.M. 1947, sec. 93-4201] defines an injunction as 'an order requiring a person to refrain from a particular act.' * * * *It is manifest that any order which requires a person to refrain from a particular act for any period of time, no matter what its purpose, is an 'injunction'* and is so treated throughout the chapter mentioned, and that the Legislature merely designated a temporary injunction, granted pending a hearing on the application, a 'restraining order' for the purpose of convenience and clarity in prescribing the procedure to be followed.'' Emphasis supplied.

In McKelvy v. Broadwater, 1929, 87 Mont. 103, 107, 285 Pac. 190, 191, Chief Justice Callaway speaking for this court with Justices Galen, Matthews, Ford and Angstman concurring said: "A temporary restraining order is an injunction.'' Emphasis supplied.

In Little Horn State Bank of Wyola v. Gross, 1931, 89 Mont. 472, 476, 300 Pac. 277, 278, this court speaking through Mr. Justice S. C. Ford, with Chief Justice Callaway and Justices Galen, Matthews and Angstman concurring, said, in part: "Upon the filing of the complaint a temporary injunction was issued restraining defendant * * * as sheriff, from proceeding with the sale of the land under the execution issued upon the judgment of Owen and Birlew. Defendants' motion to dissolve the injunction was denied, and they predicate error upon the ruling. * * * *The order denying defendants' motion to dissolve the injunction was an appealable order.* Sec. 9731, Rev. Codes 1921 [now R.C.M. 1947, sec. 93-8003, subd. 2] ; MacGinniss v. Boston [& Montana Consolidated Copper & Silver] Mining Co., 29 Mont. 428, 75 Pac. 89; Bennett Bros. Co. v. Congdon, 20 Mont. 208, 50 Pac. 556." Emphasis supplied.

In Sheridan County Electric Co-Op, Inc. v. Ferguson, 1951, 124 Mont. 543, 554, 227 Pac. (2d) 597, 603, in an opinion by Chief Justice Adair with Justices Metcalf, Freebourn and Bottomly concurring, this court directly held that any order which requires a person to refrain from a particular act for any period of time, no matter what its purpose, is an injunction and that this applies to a "restraining order."

In Marchi v. Brackman, 1956, 130 Mont. 228, 299 Pac. (2d) 761, 763, in an opinion by Mr. Justice Angstman, concurred in by Justices Horace S. Davis and Forrest H. Anderson, the court entertained and decided, on its merits, an appeal taken from a district court order granting defendants' separate motions to strike designated parts and portions from plaintiff's complaint, holding that such order so allowing the motions to strike, "was, in effect, an order refusing to grant an injunction" and therefore an appealable order under the provisions of R.C.M. 1947, sec. 93-8003, subd. 2 and sec. 93-8004, subd. 3. In the above opinion the court said :

"Plaintiffs brought this action to enjoin the defendants from proceeding with the installation of lighting structures in a special improvement district described in the complaint. Upon

the filing of the complaint a temporary restraining order and an order to show cause issued, restraining the installation until the further order of the court and requiring the defendants to appear before the court at a fixed time to show cause why they should not be permanently restrained from proceeding with the lighting project.

*"Defendants filed motions to strike most of the allegations from the complaint* and the defendant Montana Power Company filed a motion to quash, vacate and set aside the restraining order. After hearing the court entered an order granting the motions to strike and the motion to quash.

"Plaintiffs have appealed from that order. * * *

"In response to the order to show cause why the temporary restraining order should not be made permanent, *defendants filed the motion to strike and nothing more. Hence, the only cause for refusing the injunction on the record before us is the motion to strike.* The order granting the motion to strike and dissolving the restraining order was, in effect, an order refusing to grant an injunction. From that order an appeal to this court lies. R.C.M. 1947, sec. 93-8003, and State ex rel. Olsen v. 30 Club, 124 Mont. 91, 219 Pac. (2d) 307.

"Hence we have before us the question whether the court erred in sustaining the motion to strike. The allegations stricken question the validity not only of the contract but of the resolution creating the special improvement district. * * *

"The cause is remanded with directions to set aside the order sustaining and to enter an order overruling the motion to strike, to reinstate the restraining order *pendente lite* and to allow defendants a reasonable time to plead to the complaint to the end that issues may be framed and a trial thereof had on the merits.''

In Stalcup v. Cameron Ditch Company, 1956, 130 Mont. 294, 300 Pac. (2d) 511, 513, in an opinion, by Mr. Justice Horace S. Davis with Chief Justice Adair and Justices Anderson, Bottomly and Angstman concurring, this court entertained and decided an appeal from a district court order granting defendants' motion to quash a temporary restraining order issued without

bond or notice upon plaintiffs' *ex parte* application therefor made upon the filing of the complaint in the action. The plaintiffs Stalcup were represented throughout, both in the district court and in this court, by Attorneys Ralph J. Anderson and Stanley P. Sorenson who are of counsel for the plaintiff, The Guardian Life Insurance Company of America, in the instant case. The procedure and practice followed in the two causes is substantially the same. In Stalcup the complaint was filed May 14, 1956. In Guardian Life it was filed four days later, to-wit, on May 18th, 1956. The order in each case is captioned "Order to Show Cause and Restraining Order." In each cause plaintiff's counsel applied for and procured advancement on the supreme court's calendar under Court Rule XIII, subd. 3, on their representation to this court that the appeal was from an order dissolving or refusing to dissolve an injunction.

In the Stalcup appeal, supra, this court said:

"Nothing said in this opinion is to be construed as going to the merits of this litigation, which play no part in our conclusion on this appeal. In what we have here written we have decided no point controlling of the merits which will come before the district court when the trial is had. [Citing authorities.]

"Accordingly the order of the district court denying injunctive relief to the plaintiffs and appellants Juanita Davis Stalcup and Clancy R. Stalcup is set aside, vacated and reversed; and the cause is remanded to the district court with directions to issue a temporary injunction in the usual form restraining and enjoining the defendants and respondents from the commission of any of the acts specified in the complaint on file in the district court pending the trial and final determination of the cause therein. Said injunction will be issued by the district court only upon the filing therein within ten days from the date of the order of reversal heretofore entered in this cause on August 14, 1956, of a good and sufficient undertaking on the part of the plaintiffs and appellants in the penal sum of $5,000, conditioned in accordance with the provisions of R.C.M. 1947,

sec. 93-4207, and duly approved by the trial court or a judge presiding therein.''

In State ex rel. Thompson v. District Court, Fourth Judicial District, 1957, 132 Mont. 53, 313 Pac. (2d) 1034, 1037, this court's opinion is by Chief Justice Harrison, with Justices Bottomly, Adair, Castles and Angstman concurring. It involves these facts. On April 25, 1957, upon the filing of a complaint in the respondent district court the judge thereof, without notice or bond, issued an *ex parte* combination show cause and restraining order requiring the defendant Thompson to appear before the court on April 29, 1957, to show cause why he should not be required to refrain from proceeding further with the construction of a certain stock car race track in the community of East Missoula, and in the meantime it was ordered that the defendant refrain from doing any further work with or on the project. On April 26, the defendant interposed a motion to set aside the operation of the restraining order which motion he supported by his affidavit that day filed in the cause. On April 29, the return day fixed in the order to show cause, the trial court overruled defendant's objections to the restraining order and to the hearing and proceeded to hear the matter on the complaint and defendant's affidavit. Thereafter on May 2, the court made an order requiring that defendant permanently refrain ''from establishing, maintaining, building and operating upon the property described * * * the said proposed stock car race track, and that all work and labor thereon immediately cease.''

In his opinion in Thompson's case, supra, Chief Justice Harrison speaking for this court quoted with approval from the Sheridan Electric Co-Op case, supra, and in part, said:

''While there are several points raised * * * the main issue, so far as this court is concerned, is whether or not the district court was acting within jurisdiction in ordering a permanent injunction in the situation that existed.

''In Sheridan County Electric Co-op, Inc. v. Ferguson, 124 Mont. 543, 554, 227 Pac. (2d) 597, 603, Mr. Chief Justice Adair, in the opinion of the court therein stated:

" 'Our Codes, R.C.M. 1947, sec. 93-4201 to 93-4216, inclusive, govern the issuance of injunction orders. There are three kinds of such orders, namely, (1) "restraining orders," (2) "temporary injunction" and (3) "perpetual injunctions."

" 'Any order which requires a person to refrain from a particular act for any period of time, no matter what its purpose, is an "injunction." This applies to a "restraining order." R.C.M. 1947, sec. 93-4201; Labbitt v. Bunston, 80 Mont. 293, 260 Pac. 727, 730'."

Thus on July 8, 1957, being but two months before September 9, 1957, the day whereon the instant appeal was argued and submitted did all the five justices presently constituting this court, by concurring in the opinion in State ex rel. Thompson, supra, agree that sections 93-4201 to 93-4216 of the Revised Codes of Montana of 1947, "govern the issuance of injunction orders" and that thereunder and under this court's decision in Labbitt v. Bunston, supra, "Any order which requires a person to refrain from a particular act for any period of time, no matter what its purpose, is an 'injunction.' This applies to a 'restraining order'." Each concurring justice. then and thereby agreed that such was the *law* of Montana on July 8, 1957. The Legislature has made no change in such *law* since that date. The only change that has since been effected is a change in the thinking of the three members of this court who signed and concurred in the majority opinion in this, Guardian Life Insurance case. The fact remains however, that under our plainly worded statute, Judge Fall's order of May 18, 1956, is an order granting an injunction and it continues as "an injunction" (R.C.M. 1947, sec. 93-4201), and Judge Padbury's order of November 21, 1956, denying defendants' motions and refusing to dissolve such injunction is an order from which an appeal lies under R.C.M. 1947, secs. 93-8003, subd. 2, and 93-8004, subd. 3

Wetzstein Case No. 1658, 25 Mont. 135, 63 Pac. 1043. In the majority opinion in the instant case, Judge Angstman relies upon the case of Wetzstein v. Boston & Montana Consolidated

Copper & Silver Mining Co., Supreme Court No. 1658, decided March 11, 1901, reported in 25 Mont. 135, 63 Pac. 1043, being but one of a number of cases bearing the same title brought to the supreme court of Montana during that turbulent period wherein the Amalgamated Copper Company and F. Augustus Heinze did battle in what was known as "The Copper War" and "The War of the Copper Kings." For other cases entitled Wetzstein v. Boston & Montana Consolidated Copper & Silver Mining Co. see: Nos. 1516 and 1526, 25 Mont. 85, 63 Pac. 799, decided February 11, 1901; No. 1658, 25 Mont. 568, 69 Pac. 1132, decided March 14, 1901; No. 1671, 25 Mont. 570, 69 Pac. 1132, decided April 25, 1901, and 26 Mont. 193, 66 Pac. 943, decided December 23, 1901; No. 1618, 28 Mont. 451, 72 Pac. 865, decided July 1, 1903; and No. 1527, 28 Mont. 583, 76 Pac. 1134, decided April 15, 1903.

In the Wetzstein Case No. 1658, supra, 25 Mont. 135, 63 Pac. 1043, the essential facts were: On February 18, 1901, Adolph Wetzstein, as plaintiff filed in the district court of Silver Bow County, a complaint and a supporting affidavit in an injunction suit against the defendant, Boston and Montana Consolidated Copper and Silver Mining Company, a Montana corporation. Upon the filing of the complaint and on plaintiff's *ex parte* application therefor District Judge William Clancy, then the judge presiding in Department No. II of such court, without any notice whatever to the defendant, without any hearing and without requiring any bond therefor, issued an order, which, omitting the title of the court and cause, reads:

"Order to Show Cause and Restraining Order. Upon the complaint and affidavit filed in the above entitled cause,

"It Is Ordered. That the above named defendant, Boston and Montana Consolidated Copper and Silver Mining Company show cause before this court at 10 o'clock A. M. on the 2d day of April, 1901, why a temporary injunction during the pendency of this action should not be issued against you restraining and enjoining you from mining, taking away or converting to your own use any ores or minerals from said Comanche lode

claim, or the veins belonging thereto and from in any way entering upon the surface or underground crosscuts, drifts, tunnels or workings vertically underneath said Comanche lode claim or permitting any one else to trespass upon said claim in any manner, shape or way, unless you shall allow the plaintiff into joint occupancy of said premises with you and all the ore bodies belonging to the same, and of all the workings upon the same and jointly with you to engage in extracting such ores from said premises or unless you deliver to the plaintiff on the dump one fourth ($\frac{1}{4}$) of the ores which you may hereáfter mine and extract therefrom.

"Cause may be shown by oral testimony or affidavits or both in behalf of either party.

"And upon the said complaint and affidavit *it is by the said court ordered, adjudged and decreed* that the said defendant, its agents, servants and employees and each of them be in the meanwhile restrained from mining or extracting any ores or minerals whatsoever from beneath the surface or from any vein or veins belonging or appertaining to said lode mining claim or claims and the said defendant, its agents, servants and employees are hereby forbidden to commit any of the said acts and from in any way entering upon the surface or underground crosscuts, drifts, tunnels or workings vertically underneath said Comanche lode claim or permitting any one else to trespass upon said claim in any manner, shape or way, *until the further order of the said court or the Judge thereof.*

"(sgd) William Clancy,
"Judge

"Dated February 18th, 1901.
"Filed Feb. 19, 1901,
"Samuel M. Roberts, Clerk." Emphasis supplied.

Judge Clancy's above order was promptly served upon the defendant, Boston and Montana Consolidated Copper and Silver Mining Company.

Such order immediately and effectively caused a complete shut down and cessation of all mining operations in defendant's

Comanche mine which, until then, had been running full-blast and from which the defendant had extracted highgrade ore during the period from May 1, 1900, to December 31, 1900, producing net smelter returns in the sum of $1,796,126.89.

The Montana Legislature, by the enactment of Chapter III of Title VII, secs. 870 to 881 of the Code of Civil Procedure of Montana of 1895, had enacted into the law of this state the rules and regulations which govern the issuance of injunction orders and by the enactment of Chapter I of Title XIII, secs. 1720 and 1744, and particularly sections 1722, subd. 2 and 1723, subd. 3, Montana Codes of 1895, the Legislature provided the rules and regulations for taking an appeal from and obtaining a review of any such order issued by any district court or a judge thereof.

Judge Clancy's order required the defendant to cease and desist from operating its Comanche mine; it required defendant to refrain from entering either upon the surface or underground or underneath of its own mine; it required defendant to refrain from permitting anyone else to enter upon or in defendant's own mine; it tied the defendant owner's hand and feet and it required such owner to close down its operations and mine; and it terminated the employment of the defendant mining company's miners, workmen and employees.

This drastic order, so issued by Judge Clancy, then was an order granting *an injunction* from which the Legislature and the law then said and now say an appeal may be taken to the supreme court.

This right to have an appeal therefrom and have such order reviewed on the merits was wrongfully denied to the defendant mining company by the majority opinion in Wetzstein's case No. 1658, 25 Mont. 135, 63 Pac. 1043, supra.

Such opinion became and is one of the most vulnerable, unsound, ill-considered, unjust and far-reaching decisions that has emanated from this court. The mining company's appeal was taken under the authority of sections 1722 and 1723 of the Code of Civil Procedure of Montana of 1895, as amended February

28, 1899, Laws of 1899, pages 146-148.

Section 1722 reads: "An appeal may be taken to the Supreme Court, from a District Court, in the following cases:

  *  *  *  *  *  *  *  *

"2. From an order * * * granting or dissolving an injunction; or refusing to grant or dissolve an injunction * * *" Compare R.C.M. 1947, sec. 93-8003, subd. 2.

Section 1723 reads: "An appeal may be taken: * * *

"3. From an order * * * granting; dissolving, or modifying an injunction; from an order refusing to grant, dissolve, or modify an injunction * * *" Compare R.C.M. 1947, sec. 93-8004, subd. 3.

In the footnote annotation to Section 1722, supra, the Code Commission cites Blue Bird Mining Co. v. Murray, 9 Mont. 468, 23 Pac. 1022, and then says: "It is not necessary for the party against whom an order has passed to wait until the injunction has already issued, before taking his appeal: Ely v. Frisbie, 17 Cal. 250, 260. The section covers every case of an order granting an injunction, made on notice, or upon order to show cause, or without notice: Sullivan v. Triunfo Gold & Silver Mining Co., 33 Id. 390."

These controlling decisions, the majority opinion in the Wetzstein case neither cited nor observed.

Section 870 of the Code of Civil Procedure of Montana of 1895 [now R.C.M. 1947, sec. 93-4201], read: "An injunction is an order requiring a person to refrain from a particular act."

This controlling statute, the majority opinion in the Wetzstein case, supra, neither cited nor observed.

Judge Clancy's order required the defendant mining company and "its agents, servants and employees" to refrain from doing any of the various particular acts enumerated in the order.

Under every reasonable interpretation or construction of section 870, supra, Judge Clancy's order was an order granting an injunction. The Legislature so defined it. That made it "the law of the realm" irrespective of whether the order be labelled

an "order to show cause," a "cease and desist order," a "restraining order," an "interlocutory order," a "preliminary injunction," a "temporary injunction," a "special injunction," a "preventive injunction," a "provisional injunction," a "prohibitive injunction," a "prohibitory injunction," a "preliminary mandatory injunction," a "mandatory injunction," a "common injunction," a "special injunction," a "writ of injunction," an "injunction pendente lite," a "permanent injunction," a "perpetual injunction," or a "final injunction.'"

"Whether an order is a restraining order or a temporary injunction must be determined from its form and substance. The restraint which the order purports to impose and not the name given it determines its true name and character." 43 C.J.S. Injunctions, sec. 8, page 416, notes 99 and 1; State ex rel. Public Service Commission v. District Court, supra.

As was clearly pointed out by Justice Pigott in his dissent in Wetzstein's Case No. 1658, 25 Mont. 135, 63 Pac. 1043, 1045, supra, the order there "is a species of injunction order, and is an order from which an appeal lies by virtue of section 1722," supra.

In their opinion the majority of the court in the Wetzstein case, concede that they "are aware that in Bennett Bros. Co. v. Congdon, 20 Mont. 208, 50 Pac. 556, the court decided that a restraining order was an order from which an appeal might be taken, and that in Butte & Boston Consolidated Mining Co. v. Montana Ore Purchasing Co., 24 Mont. 125, 60 Pac. 1039, the court considered such an appeal." However, the two justices who signed the majority opinion in Wetzstein's case ran away from and refused to follow such sound precedents and, taking the bit in their teeth, they continued on their run away course completely ignoring section 870, supra, refusing to apply sections 1722 and 1723, supra, and overriding well-established precedent with the astonishing declaration that the rule of *Stare decisis* does not control in matters of practice.

*Oversight-Inconsistency.* In King v. Pony Gold Mining Co., 28 Mont. 74, 87, 88, 89, 72 Pac. 309, 313, Commissioner John B.

Clayberg, in an opinion concurred in by all members of the court, including the two responsible for the above Wetzstein decision, called attention to the oversight and inconsistency of the majority in the Wetzstein case, supra, and said:

"This court, in the case of Wetzstein v. Boston & Montana Consol. Copper & Silver Mining Co., 25 Mont. 135, 63 Pac. 1043, in treating of a question of practice, used the following language: 'The rule of *stare decisis* does not here control, as it is not unusual, but proper, in matters of practice, to establish a correct and legal practice, if an error has been committed illadvisedly in a former opinion of this court, provided that it is apparent that no substantial injury will be suffered by litigants by reason of reliance upon the precedent.' In this opinion the court does not refer to the case of Ramsey v. Burns, 24 Mont. 234, 61 Pac. 129, in which this court uses the following language: 'Decisions upon mere matters of practice, or interpretations of what may perhaps not improperly be called "adjective law," should never be disturbed unless it be apparent that injustice would result from adherence thereto.' * * * This court again said, in the case of Carr, Ryder & Adams Co. v. Closser, 27 Mont. 94, 69 Pac. 560: 'That decisions upon mere matters of practice be not disturbed, even if erroneous, is of prime importance. It is most desirable that the practice be settled and known. Unless it be apparent that injustice will likely result from adherence to such decisions. (Ramsey v. Burns, 24 Mont. 234, 61 Pac. 129), or that a change will not work a wrong, they should not be disturbed. Only the most cogent reasons can justify a court in overturning them.' It will be noticed that Wetzstein v. Boston & Montana Consol. Copper & Silver Mining Co., supra, is not referred to in this decision. We thus see that this court has fallen into an inconsistency in the decisions of the three cases last cited, * * *"

By their concurrence in Commissioner Clayberg's opinion in King v. Pony Gold Mining Co., supra, Justice Milburn and Chief Justice Brantly conceded that their majority opinion in Wetzstein's case is inconsistent with this court's ruling in Ramsey

v. Burns, supra, and its later ruling in Carr, Ryder & Adams Co. v. Closser, supra, decided but sixteen months after the Wetzstein case.

In April, 1903, the Wetzstein decision, Supreme Court No. 1658, 25 Mont. 135, 63 Pac. 1043, was considerably weakened by Commissioner John B. Clayberg's able opinion prepared for and pronounced by a unanimous court in King v. Pony Gold Mining Co., supra.

In December, 1903, the Wetzstein decision, supra, was again under attack and dealt three severe body blows by the enactment, by the Second Extraordinary Session of the Eighth Montana State Legislative Assembly, 1903, of the three ''Fair Trial'' laws, viz.: Chapter 1 [now R.C.M. 1947, sec. 93-216]; Chapter 2 [now R.C.M. 1947, sec. 93-2906]; and Chapter 3 [now R.C.M. 1947, sec. 93-901, subd. 4] of said Second Extraordinary Legislative Session of 1903.

*Repudiation.* In October, 1927, the bell tolled and Wetzstein died when all five justices of this court in Labbitt v. Bunston, supra [80 Mont. 293, 260 Pac. 730], said: ''We cannot subscribe to the reasoning employed by Mr. Justice Milburn in the Wetzstein Case.''

In Labbitt v. Bunston, supra, decided October 25, 1927, this court speaking through Mr. Justice John A. Matthews, with Chief Justice Callaway and Justices Galen, Stark and Myers concurring, repudiated and sounded the death knell of Wetzstein, supra, and said:

''Sections 9240 to 9255, Revised Codes of 1921 [presently R.C.M. 1947, secs. 93-4201 to 93-4216], deal with the subject of 'Injunction' and are included in a chapter entitled 'Injunction.' In the Wetzstein Case, by a divided court of two to one, Mr. Justice Milburn, writing the decision, and Mr. Justice Pigott dissenting, it was declared that section 873 of the Code of Civil Procedure of 1895, now section 9245 of the Revised Codes of 1921 [presently R.C.M. 1947, sec. 93-4206], 'very clearly makes a distinction between an injunction and a restraining order,' * * * Mr. Justice Pigott dissented, stating that

in his opinion a restraining order is a species of injunction and is therefore an order from which an appeal will lie. * * *

"We cannot subscribe to the reasoning employed by Mr. Justice Milburn in the Wetzstein Case, to the effect that because the provisions of section 9245 [presently section 93-4206], distinguish, as a matter of procedure, between an injunction granted upon notice and hearing and a temporary restraining order, the latter is not an injunction.

"Section 9240 [presently R.C.M. 1947, sec. 93-4201] defines an injunction as 'an order requiring a person to refrain from a particular act.' No definition of a restraining order is given in the chapter above referred to, other than that contained in section 9245 [presently section 93-4206], that it is an order by which a court or judge may 'enjoin' the defendant from committing the act complained of 'until the hearing and decision of the application' upon notice or order to show cause. It is manifest that any order which requires a person to refrain from a particular act for any period of time, no matter what its purpose, is an 'injunction' and is so treated throughout the chapter mentioned * * *

"Where the matter is heard upon an order to show cause, the right to a temporary injunction is 'adjudicated' by the decision rendered after the hearing [Citing case.]; so here, as the motion to dissolve presented the question of plaintiff's right to the restraining order, and the decision on the motion was equivalent to a decision on the hearing on the order to show cause and rendered such a hearing needless, the order of September 24th was an 'adjudication' of the plaintiff's right to an injunction pendente lite and an order refusing to dissolve an injunction, from which an appeal lies under section 9731, above [Rev. Codes 1921, now R.C.M. 1947, sec. 93-8003], and it is so declared by Mr. Justice Hunt, speaking for this court in Bennett Bros. Co. v. Congdon, 20 Mont. 208, 50 Pac. 556, which decision is referred to in the Wetzstein opinion, but therein the distinction between an appeal from a restraining order and from an order refusing to dissolve such injunction is not noted.

"For the reasons stated, the motion to dismiss the appeal is denied."

In his book "The Chaquemegon" former Lieutenant Governor William R. Allen had this to say concerning this most exciting period of our history which gave both birth and death to Wetzstein's case No. 1658, 25 Mont. 135, 63 Pac. 1043:

"Valuable mining properties lay idle while contestants were each trying to gain the advantage of the other, through political intrigue and biased court decisions. It became a state scandal. The good name of the state and the many good people in it * * * were entitled to protection, as well as were the lawful owners of the properties. Something had to be done. * * *

"Under the state law * * * the merits of the case * * * were all decided in the district court of the county in which the property was located. When appealed to the supreme court, the higher court could * * * only decide upon the legality of procedure. These mining properties were in Silver Bow County, where the judicial murder was committed. The Supreme Court was only the undertaker, to legally inter the corpse. The side that could control the courts of the county won the decisions.

"The so-called 'Fair Trial' or Change of Venue law provided that if a litigant felt he could not get justice in one county, he could ask for a change to another county. When this law passed it settled the copper war and restored dignity and respect to the courts of Montana and justice to litigants.

"In the legislative battle [1903] to pass this law the lines were sharply drawn and bitterly fought. The real antagonists behind the scenes in the battle were the Amalgamated Copper Company, and F. Augustus Heinze. Heinze had control of Silver Bow Courts by injunction and other court actions; he was preventing the operation of many of the company's properties. Heinze made a masterful and brilliant fight, but his premise was wrong and he lost.

"Within a few years the company paid him $10,500,000 for his interests and he retired from the Montana mining field, only to fall a victim to the snares of Wall Street, where he lost it all."

*Stare decisis.* The Constitution of Montana and the laws enacted by the Legislature in conformity thereto will continue as the law of this jurisdiction only when the time honored doctrine of *Stare decisis* is observed and followed in this and the other courts of our state.

*Stare decisis* is a Latin phrase. It is the principle that the decisions of this court should stand as precedents for future guidance. It means to stand by decided cases; to uphold precedents; to maintain former adjudications. In law, it means that when the highest appellate court of the jurisdiction has once laid down a principle applicable to a particular given state of facts, it will adhere to that principle and apply it to all future cases, irrespective of whether the parties and property are the same.

Under this principle, a deliberate decision of a court, made after argument on a question of law fairly raised in the case, and necessary to its decision, is an authority of binding precedent in the same court and likewise in other courts of equal or lower rank in subsequent cases where that particular point is again in controversy.

It is not necessary that we be concerned with how good or how bad the first pronouncement of the highest appellate court of the state might be in construing and interpreting the Constitution of our state or the enactments of our state Legislative Assembly so long as that construction holds and is adhered to until such time as the people see fit to change the Constitution and the Legislature sees fit to change the laws enacted by it under the constitutional method applicable thereto. The highest appellate court of the state should stand by its decided cases and rely upon the people and the Legislature to take care of any modifications deemed necessary to the law by reason of any decisions of the Supreme Court construing or interpreting the provisions of either the Constitution or statutes of the state. All we need to make the ancient and honored legal principle of *stare decisis* a part of Montana's Constitution is a constitutional amendment providing that the judicial powers of the

supreme court of this state shall not be construed as giving the supreme court the power to overrule, modify or change any prior decision of such court construing the Constitution of Montana and the acts of the Legislative Assembly of the state promulgated pursuant thereto.

It is of the highest importance that in the process of making the principle of *stare decisis* applicable and controlling as to the decisions of this, the supreme court, construing either the Constitution of the state or the acts of the Legislative Assembly of the state, it be done and accomplished *only* by constitutional amendment or new legislative enactment.

Ours is a government of *law*, not of men.

That *law* is *written* in the Constitution and statutes of this state and in the Constitution and statutes of this nation.

The "supreme law" is not what the Supreme Court says it is. No Montana court has ever been empowered to change the language of the Constitution, state or federal, or by interpretation or construction make the Constitution or any valid statute mean what it does not say.

No judge or justice and no collection of judges or justices shall exercise any powers properly belonging to the legislative department of government. Montana Constitution, Art. IV.

"So long as our Constitution distributes the powers of government among the three departments—legislative, executive, and judicial—and forbids one department exercising any powers belonging to another, the courts must decline to legislate or to read statutes as some people may think they ought to be written, rather than read them as they are." State ex rel. Driffill v. City of Anaconda, 41 Mont. 577, 583, 111 Pac. 345, 347.

In Neumann v. Moretti, 146 Cal. 31, 79 Pac. 512, at page 513, it is said:

"The restraining order was an injunction. It required the defendant to refrain from a particular act. Code Civ. Proc., sec. 525. An appeal lies from an order refusing to dissolve an injunction. Code Civ. Proc., sec. 963, subd. 2; Schmidt v. Bitzer [138 (Cal.) XIX], 71 Pac. 563. It was admitted that no under-

taking was given or required by the judge. It was the duty of the court or judge to require a written undertaking to the effect that plaintiff would pay to the party enjoined such damages as such party might sustain by reason of the injunction (Code Civ. Proc., sec. 529), and the injunction will be dissolved in case of such failure to give the undertaking (McCracken v. Harris, 54 Cal. 81; Alaska Improvement Company v. Hirsch, 119 Cal. [249] 250, 47 Pac. 124, 51 Pac. 340). It is claimed by respondent that the restraining order was not in fact an injunction but a temporary restraining order, in which no undertaking is required. * * * If it be conceded that there is such distinction as to requiring a bond, we are clearly of the opinion that in this case the order was not a temporary order within the meaning of the statute. * * * It would be the better practice, and certainly is the general practice, to require an undertaking during such temporary restraining order. But in all cases where a preliminary injunction is granted in the first instance, or after an order to show cause, the undertaking must be required and given. As said in Lambert v. Haskell, 80 Cal. [611], 620, 22 Pac. [327] 330: 'It seems plain that the undertaking provided for by the Code of Civil Procedure is upon the preliminary injunction. No other injunction is provided for therein. And ordinarily no undertaking could be required on the final decree'."

In Inhabitants of Town of Lincolnville v. Perry, 1954, 150 Me. 113, 104 A. (2d) 884 at page 887, it is said: "What then was the effect of the restraining order? An injunction has been well described as a judicial process whereby a party is required to do or refrain from doing a particular thing. Under our practice, a restraining order is a form of injunction issued *ex parte* for the purpose of restraining the defendant for what should be a very brief period pending notice and hearing on an application for a temporary injunction."

In Lincoln v. Superior Court of Madera County, 51 Cal. App. (2d) 61, 124 Pac. (2d) 179 at page 182, it is said: "Although the order of the Superior Court of Madera County was designated as a restraining order, and although the language of the

above section only applies to injunctions, it is clear that the use of the word 'injunction' in the section is intended to apply to restraining orders as well as to injunctions; because, unless a preliminary injunction could follow the restraining order, the latter would be without purpose. * * * In addition, the order restrains the acts not only until the hearing on the preliminary restraining order, but also restrains the acts 'until the further order of this court.' It is the law in this state that regardless of what an order is called by the court issuing it, that if the restraint is 'until the further order of the court,' that it is a preliminary injunction. [Citing Neumann v. Moretti, supra.]"

In State ex rel. Smith v. Vedder, 130 Kan. 472, 287 Pac. 232 at page 233, it is said: "Some discussion is advanced by the appellant as to the meaning and effect of a 'restraining order' or 'temporary injunction.' In Laswell v. Seaton, 107 Kan. 439, 191 Pac. 266, 267, it was said:

" ' " 'Temporary injunction' and 'restraining order' are often used synonymously. * * * The restraint which the order purports to impose, and not the name given to it, determines its true name and character." State v. Johnston, 78 Kan. 615, 97 Pac. 790; City of Emporia v. [Emporia] Telephone Co., 90 Kan. 118, 133 Pac. 858.'

"It has become the custom as a matter of practice in Kansas to use the two terms 'restraining order' and 'temporary injunction' interchangeably. In twenty years of fairly active practice in this state the writer has failed to learn any difference between the two. If a distinction does exist, it is one 'without a difference.' After all, as pointed out in the Laswell Case, supra, [107 Kan. 439, 191 Pac. 266], it is the effect of the order, not the name given it, which determines its true character.

"The order served on the defendant stated that he was restrained and enjoined until further order of the court. He made no effort to dissolve or modify the order. Such an order * * * does not lose its force by the lapse of time, even if there is no trial or hearing. Once served, it must be obeyed, and the defendant disregarded it at his peril. See 32 C.J. 373, sec. 633;

also State v. Werner, 80 Kan. 222, 101 Pac. 1004. Nor does the fact that several terms of court have intervened since its issuance, without any trial or further order with reference thereto, cause the original order to lose its force where it is to remain in effect until the 'further order of the court.' Ex parte Roper, 61 Tex. Cir. 68, 134 S. W. 334.

''The trial court had the right and power to enforce the original order by punishment for contempt.''

Wetzstein's Case No. 1658, 25 Mont. 135, 63 Pac. 1043 and the instant Guardian Life Case are alike in certain respects but most dissimilar in other particulars. Each is an equity case being a suit for an injunction. In each cause, immediately upon the filing of the complaint, the district judge, without bond and without notice to the defendants, issued an ex parte order requiring each defendant named in the order to refrain from the doing of the particular acts enumerated therein. In each cause the restraint imposed by the injunction order was made effective until such time as the court or judge should make a further order modifying, vacating or otherwise altering the initial order.

In Wetzstein's case Judge Clancy's initial order was made effective *''until the further order of the said court or the Judge thereof.''* In the Guardian Life case Judge Fall's initial order was made effective *''until the further order of this Court.''*

In Wetzstein's case counsel for the defendant mining company well knew it would avail them nothing to petition or move Judge Clancy to quash or dissolve his initial injunction order, so defendant made no application to the district court for relief, but came direct to the Supreme Court for relief by appeal.

At that time, February 18, 1901, there was no law in Montana under which the defendant mining company could have disqualified Judge Clancy for imputed bias or prejudice. There likewise was then no law under which defendant could have obtained a change of the place of trial of the cause from Silver Bow County to another county of the state, nor was there then any law under which it was expressly made the duty of the Supreme Court on appeal to it of an equity case to review and

determine all questions of fact arising upon the evidence presented in the record as well as questions of law.

However Wetzstein's Case No. 1658, 25 Mont. 135, 63 Pac. 1043, was one of the contributing factors that precipitated the crisis that brought about the enactment in December 1903 of Montana's three ''Fair Trial Laws'' being Chapters 1, 2 and 3 of the Laws of Montana passed at the Second Extraordinary Session of Eighth Legislative Assembly of 1903 at pages 7 to 10 thereof (now R.C.M. 1947, secs. 93-216, 93-2906 and 93-901, subd. 4, as amended subsequent to December 10, 1903).

As is said in Vol. 1, Sander's History of Montana at page 423: ''It would unduly prolong the account of this struggle to cover the entire field of judicial controversy between Heinze and his mining companies, the Montana Ore Purchasing Company and other concerns organized by him, on the one hand, and the allied corporations under the control of the Amalgamated, on the other. *Heinze's favorite and effective weapon was the injunction.* Usually issued at his behest, it was paralyzing in its effect for it closed down immensely valuable properties, put a stop to their output of precious metals and threw thousands of miners out of employment.'' Emphasis supplied.

Again at page 425 of the above authority: ''It was this crisis that led to the calling of the extraordinary session of the Legislative Assembly in 1903 that passed the so-called 'Fair Trial Bill'.''

Realizing the futility of applying to Judge Clancy for any relief from his initial injunction order in Wetzstein's case, the defendant mining company took an immediate appeal direct to the Supreme Court from such order. The record on the appeal was filed in this court on February 25, 1901, and considerably in advance of April 2, 1901, the day set in Judge Clancy's order for defendant to show cause why an injunction *pendente lite* should not be granted against it. Thus the appeal in Wetzstein's case was taken direct to the Supreme Court from Judge Clancy's initial injunction order of February 18, 1901. There was no motion in the district court to dissolve the injunction.

In the instant Guardian Life case no appeal was taken from Judge Fall's initial injunction order of May 18, 1956. The instant appeal is from Judge Padbury's order of November 21, 1956, made after hearing had, refusing to dissolve Judge Fall's order made more than six months before.

In the taking of the instant appeal the defendants relied upon the provisions of section 6 of Article III and section 15 of Article VIII 'of the Constitution of Montana, and of sections 93-8003, subd. 2 and 93-8004, subd. 3, and upon the definition of an injunction enacted into the law of Montana in section 93-4201, supra, of the Codes. The majority opinion in the instant Guardian Life case wholly overlooked the provisions of section 93-4201, supra, as did the majority opinion in Wetzstein's case completely ignore the same statute, then section 870 of the Code of Civil Procedure of 1895.

By the enactment of Chapter 1 of the Laws passed at the Second Extraordinary Session of the Eighth Legislative Assembly, 1903, section 21 of the Montana Code of Civil Procedure of 1895, was amended by adding thereto an additional sentence (now being the last sentence of R.C.M. 1947, sec. 93-216) which, so far as here pertinent, reads: "In equity cases * * * the supreme court shall review all questions of fact arising upon the evidence * * * and determine the same, as well as questions of law, unless, for good cause, a new trial or the taking of further evidence in the court below be ordered * * *"

R.C.M. 1947, sec. 93-401-15, provides: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted * * *"

R.C.M. 1947, sec. 93-401-16, provides: "In the construction of a statute the intention of the legislature, and in the construction of the instrument the intention of the parties, is to be pursued if possible * * *"

The "instrument" here involved is Judge Fall's order of May 18, 1956. What does the order do? It commands that the

defendants refrain "from doing any acts attempting to in any way enforce the collection of the * * * deficiency tax * * * *until further order of this Court.*"

What does the *law* say about such an order? The *law,* section 93-4201, supra, says: "An injunction is an order requiring a person to refrain from a particular act." Judge Fall's order does precisely that. It requires four public officers and one constitutional administrative board of this state to refrain from particular acts which they are required by law to do and perform. Judge Fall's order is an injunction. It requires the defendants to refrain from performing their official duties. It ties their hands. The intention of the Legislature is clearly made manifest in section 93-4201.

Judge Padbury, after a full hearing on its merits of defendants' motion to dissolve the restraining order so issued by Judge Fall, by a general order of November 21, 1956, denied defendants' motion and refused to dissolve the injunction order complained of. From this order by Judge Padbury the defendants took this appeal to this court as was their right.

The law section 93-8003, subd. 2 and section 93-8004, subd. 3, supra, provide that an appeal may be taken to this court from a district court from an order refusing to dissolve an injunction.

Under the provisions of sections 93-401-15 and 93-401-16, it became and was the duty of this court to pursue the clear intention of the Legislature as expressed in sections 93-4201, 93-8003 and 93-8004, and to simply ascertain and declare what is in terms therein contained and then to apply and give effect to the plain mandate of the Legislature as there written and declared.

The *law* in this state is what the Constitution says it is and what the Legislature acting within constitutional limits says it is. No state court, district or supreme, has any legal authority whatever to rule out or alter a law passed by the Legislature unless the law violates the Constitution. No court in this state has any authority or right to change the Constitution by so much as one word, either by interpretation or in any other

manner. To do so is as illegal as armed robbery and deserves no more respect. It must be remembered the Constitution is supreme over the court, not the court over the Constitution. Nothing could be more dangerous than a government by judges acting without restraint by written statute and by written Constitution. This court has no right to pass upon the wisdom of any law enacted by the Legislature. True the court may pass upon the law's constitutionality, but as to its wisdom, that is a question solely for the legislators.

Plaintiff's motion to dismiss the appeal in the instant action, being devoid of merit, should have been denied.

This court has jurisdiction in this appeal and it should exercise such jurisdiction, hear the appeal and decide same on its merits.

Plaintiff's complaint discloses the plaintiff has an adequate remedy at law under the provisions of section 84-4502, supra, hence Judge Fall's injunction order was improvidently issued. It follows that defendants' motion to dissolve such injunction order should have been granted and that Judge Padbury's order refusing to dissolve the injunction was both erroneous and appealable.

A timely and proper appeal was taken to this court.

Under the ultimate facts pleaded and the law above cited Judge Padbury's order of November 21, 1956, refusing to dissolve the injunction order of May 18, 1956, should be vacated and set aside and the defendants, The State of Montana, The State Board of Equalization, its three members and the State Treasurer of the State of Montana, should be relieved forthwith of the unlawful restraint to which they have been subjected and by which for more than thirty-two months past, the defendant State of Montana and constitutional officers have stood bound, hand and foot, and enjoined from performing the official duties imposed upon and required of them by the statutes of this state.

By its refusal to entertain and decide this timely and proper appeal on its merits and by its dismissal of such appeal and its

582

denial of all relief sought, a majority of this court has withheld from the defendants the plain right to which each is entitled under the provisions of both the Constitution and statutes of Montana.

MR. JUSTICE BOTTOMLY:

I concur in the foregoing dissenting opinion of MR. JUSTICE ADAIR.